## General Exchange Ins. Corporation v. Kinney et al.

June 9, 1939.

R. Monroe Fields, Judge.

**78**

Andrew E. Auxier and John E. Jenkins for appellant.

W. W. Reynolds for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

On March 30, 1937, the appellee, Beulah Kinney, through her husband, Millard Kinney purchased of E. B. Kendrick, doing business as Kendrick Motor Company in Pikeville, a Pontiac sedan, the cash selling price of which was $947, the purchase being evidenced by a conditional sale contract securing the unpaid purchase price. The Kendrick Motor Company assigned the contract to General Motors Acceptance Corporation, the assignment guaranteeing the payment of the balance. On the same day the appellant, General Exchange Insurance Corporation, issued a policy of insurance on the automobile in favor of the purchaser, the dealer and General Motors Acceptance Corporation (hereinafter called G. M. A. C.) as their interests might appear, covering loss or damage to the automobile "to an amount not exceeding the actual cash value of the property at the time any loss or damage occurs" and not to exceed what it would then cost to replace it with another of like kind and quality. The policy excluded "loss or damage due to confiscation or authorized destruction by duly constituted governmental or civil authorities" and loss "while used in any illicit or prohibited trade or transportation."

Millard Kinney operated the car as a taxicab until the night of May 19, 1937, when it was seized by investigators of the Federal Alcohol Tax Unit in Wise County, Virginia, about 45 miles from Pikeville. These officers were on the road looking for automobiles illegally transporting liquor and pursued this car. The occupants threw liquor from the car and outdistanced the officers, but abandoned the car and it was later found and seized by the officers and libel confiscation proceedings by the United States were instituted on August 12, 1937.

At the time of the seizure the appellee, Beulah Kin-

ney, owed an unpaid balance on the car of $761.77. On July 2, 1937, she instituted this action as sole plaintiff against the appellant, seeking to recover $947, the original cash selling price, alleging that the car was stolen, without making Kendrick and G. M. A. C. parties, but later on by appropriate pleadings they came into the action as interested parties having liens on the car.

After the car was seized by the officers, Mrs. Kinney and her husband made a number of trips to see the Federal officers in the endeavor to obtain possession of the car and also had some correspondence with Federal authorities in which was pointed out to them the proper procedure by which they might seek to have the car restored to them by filing an intervening petition in the libel proceeding. As stated in appellant's brief, the record shows that they acquainted Kendrick with the instructions received by them from the Federal officers relating to obtaining release of the car and agreed with the motor company to contribute to the cost of obtaining release through an intervening petition filed by the finance company.

It is alleged in the petition and appears in the proof that Mrs. Kinney immediately notified appellant's agent of the theft of the car and delivered the policy to him, but that he denied liability on the part of the company and failed to return the policy. On July 23, Mrs. Kinney was notified by appellant's counsel that the company denied liability by reason of the above mentioned exclusions of the policy and under the facts surrounding the alleged loss and also that the company relied upon her to perform the duty imposed on her under the policy to protect herself and the insurance company by filing an intervening petition in the libel proceeding and recovering possession of the car.

Some time later G. M. A. C. and Kendrick filed an intervening petition in the libel action and, the car being appraised at $450, G. M. A. C. posted a cash forthcoming bond and the car was delivered to it. G. M. A. C. returned the car to Kendrick at Pikeville for the purpose of having it sold, and, upon his failure to make sale, it was later sold by G. M. A. C. for $575. The intervening petition filed by G. M. A. C. and Kendrick in the libel proceeding was disallowed by reason of the fact that they had not made inquiry prior to the sale of the car as to whether Mrs. Kinney was suspected of be-

ing engaged in the illegal liquor traffic and the $450 cash bond posted by the finance company was forfeited on account of failure to return the car.

The appellant by answer presented the defenses, (1) that the car was not stolen, (2) that, although it was stolen, the loss was excluded by the policy because the car was being used to transport liquor illegally by the thieves and because the loss or damage was due to confiscation by government authorities, (3) that Mrs. Kinney violated the policy provisions and her duty to the insurance company in not taking action to prevent the forfeiture of the car in the libel proceeding, and (4) that the action was prematurely brought because the petition failed to allege fulfillment of conditions precedent to instituting the action.

Judgment was rendered by the trial court for $947, which was apportioned as follows: $172.60 to G. M. A. C., the amount of its first lien, $589.17 to Kendrick, the amount of his second lien, and the balance of $185.23 to Mrs. Kinney. This appeal is from that judgment and the grounds for reversal urged are those presented as a defense in appellant's answer above mentioned. It is also contended that if any recovery was proper, the amount adjudged was excessive.

(1) On the issue as to whether or not the car was stolen, Millard Kinney testifies that on the night in question the car was parked near the depot in the neighborhood of the Kinneys' residence; that he and his wife were going to the picture show and gave permission to his brother, Willie Kinney, to use the car, with instructions to him to put the car back in approximately the same place when he finished with it; that he and his wife after the picture show returned home, but the car was not where he had instructed his brother to put it, and that they assumed that his brother still had the car; not finding the car, the following morning they communicated with the brother, who informed them he had placed the car near the depot, near which Mrs. Kinney lived, and that the car must have been stolen. Willie Kinney corroborates this testimony, as well as a boy who testifies that he was with Willie Kinney while he was using the car, expecting to pick up two girls, and that when they did not find the girls they left the car near the depot with the keys in it. The next morning Millard Kinney reported to the Police Department that

the car had been stolen and inquiries were made concerning it. Millard Kinney testifies that several days later he learned for the first time that the car was in the possession of Federal officers in Norton, Virginia.

Numerous witnesses testified on this issue and the insurance company introduced a number of witnesses whose testimony tended to show that Millard Kinney was engaged in the illegal liquor traffic and that a number of witnesses who testified on this issue for Mrs. Kinney were also engaged in the illegal liquor business. Much testimony was also introduced tending to contradict the witnesses introduced for the appellees. This was necessarily the character of testimony the appellant was compelled to rely on, as it, of course, could secure no direct testimony showing that the car was not stolen. A number of witnesses, including officers and business men, testified that Millard Kinney's reputation as to being engaged in the illegal liquor business was good and that they had never heard of his being connected with it. On the whole, the evidence was very conflicting and the most to be said for appellant's contention is that the evidence is sufficient to create in our minds a doubt as to whether the car was stolen. Without going at great length into the testimony, we have carefully considered it and are of the opinion that it was sufficient to support the finding of the chancellor that the car was stolen, under our rule that where on the evidence the mind of this court is in doubt the finding of the chancellor will be affirmed.

(2) This brings us to a consideration of appellant's contention that, although the car was stolen, the loss was not covered by reason of the exclusions of the policy above mentioned, which excluded loss by confiscation and while being used in an illicit or prohibited transportation.

Numerous authorities from this and other courts are cited by appellant to the effect that insurance companies may insert in their policies as many provisions restricting their liability as they deem proper, provided such provisions are not unreasonable or contrary to public policy. There is no question whatever as to the soundness of this rule, and we have no doubt that the exclusionary provisions of the policy relied on by appellant are not unreasonable or contrary to public policy.

However, appellant in this contention is in error in assuming that the loss occurred at a time when these exclusionary provisions were operative. It assumes that the loss was occasioned by the confiscation of the car by the Federal agents. This argument and assumption overlooks the fact that the factual situation upon which the operation of these exclusionary provisions was predicated had not come into existence at the time when the real loss under the policy occurred, namely, the theft of the car. By the provisions of the policy, loss under it accrued at the time the car was stolen and could thereafter be tolled only by failure of the assured to comply with conditions of the policy or a return of the car in as good condition as when stolen. Liability for the theft could not be defeated under the exclusionary provisions by the subsequent arising of a factual situation upon which the operation of the exclusionary provisions of the policy was predicated. Had it not been for the fact that the thief, or thieves, who stole the car loaded it with liquor in violation of the Internal Revenue Laws and thereby subjected it to seizure and forfeiture by the Government, it may be that the car would never have been heard of again. Undoubtedly the exclusionary provisions of the policy would have operated to defeat a recovery by the assured if the car had not been previously stolen, but certainly it is all out of reason to say that when a car has been stolen and loss under the policy thereby established, the thief may thereafter by any action on his part prevent a recovery on the policy for the theft. Such a construction would place the car owner at the whim of a thief as to right of recovery on a policy insuring against theft.

When the car was placed by Millard Kinney in the possession of his brother, if his brother thereafter transported intoxicating liquor in the car, the exclusionary provisions would defeat a recovery, even though such illegal action on the part of his brother was unknown to the plaintiff and even though it was against her will, because it was the duty of the assured to see at her peril that the car was not so used as to breach the exclusionary provisions, and the question of diligence is immaterial. These exclusions, being absolute, are promissory warranties, a breach of which is not excused by lack of knowledge of consent upon the part of the insured, but certainly no condition or exclusion of the policy is to be construed as a promissory warranty upon the part of

the insured as to any action by a thief who has stolen the car. We are of the opinion that loss under the policy accrued when the car was stolen and was not defeated under the exclusionary provisions by subsequent seizure and forfeiture by the Government on account of the illegal transportation of liquor therein by the thief.

(3) Appellant's contention that there can be no recovery under the policy by reason of the fact that Mrs. Kinney violated her duty under the common law and the provisions of the policy in not taking action by intervening petition to prevent forfeiture of the car by the Federal government overlooks the fact that the policy insured both Kendrick and G. M. A. C. against loss as their interests might appear. It is extremely doubtful, to say the least, that even Mrs. Kinney would be barred by reason of her failure to file this intervening petition because, under the policy, the duty of Mrs. Kinney was to assist the company by the filing of replevin or other proceedings for the recovery of the car and the company was required to reimburse her for any expense incurred at its request. Under the policy it was the duty of the company to make request on her to intervene in the libel proceeding if it so desired and to reimburse her for the expense, but instead of making this request, the company denied liability on the policy and attempted to place on her the sole burden of carrying on litigation to secure return of the car. It is also apparent that she relied on the intervening petition filed by Kendrick and G. M. A. C. to secure the car for her after consultation with Kendrick concerning the matter. We do not deem it necessary expressly to decide this contention as to her, however, in view of our conclusions as to the amount of recovery to which appellees were entitled, which will be hereafter indicated. Unquestionably G. M. A. C. and Kendrick, who were insured by the policy, did everything possible to minimize their loss—as a matter of fact, there is no contention that they did not. They are therefore entitled to recover to the extent of the loss sustained by them.

(4) It is suggested in appellant's brief that the policy provided for notice and proof of loss and that the loss was not payable until 60 days after notice, ascertainment and estimate and verified proof of loss was received by the company, and that no action is maintainable until the assured has fully complied with all the requirements of the policy, and that the petition was in-

sufficient in failing to allege fulfillment of conditions precedent to instituting the suit.

It is alleged in the petition, however, that immediate notice of loss in writing was given the company and this is not denied, the only denial in the answer being that the plaintiff rendered to defendant the statement of loss required by the conditions of the policy. Further, it is shown that defendant's agent denied loss under the policy, took possession of the policy and did not return it to Mrs. Kinney. As the company denied liability from the beginning, proof of loss was not necessary. Shawnee Fire Insurance Company v. Roll, 145 Ky. 113, 140 S. W. 49; Equitable Life Assurance Society of U. S. v. Adams, 259 Ky. 726, 83 S. W. (2d) 461. And where an insurer with notice of loss denies all liability he cannot complain that the insured did not observe the provision of the policy requiring him to wait 60 days before instituting action. Phoenix Insurance Company v. Flowers, Ky., 124 S. W. 403. We are therefore of the opinion that the suit was not prematurely brought and that the petition was sufficient.

Appellant is undoubtedly correct in its contention that the trial court committed error in entering judgment for $947. While Mrs. Kinney was credited with $317 on her old car on the purchase of the Pontiac and agreed to make 18 payments of $44.81 each amounting to $806.58, which sum, added to the $317, makes a total of $1,123.58, yet this latter sum included the carrying charges, insurance on the car and interest. The actual cash selling price was $947, according to Kendrick's testimony, and this must be accepted as the value of the car at that time. Certainly after being driven 5,000 miles or more as a taxi the car was of far less value than its original selling price. The obligation of the policy was to pay only the actual cash value at the time of loss and the burden was on the assured, Mrs. Kinney, to introduce evidence establishing this actual cash value, which she wholly failed to do. The best evidence of value in the record is the appraisal of the car at $450 by the Federal government and the sale for $575 by G. M. A. C. The only thing in the record that could possibly be regarded as evidence of value by the plaintiff was the statement of Millard Kinney that the car was as good as new. This we know to be untrue as it is impossible that a car driven 5,000 miles as a taxi could have the same cash value as a new car.

However, aside from these considerations, we regard the action of Kendrick and G. M. A. C. in obtaining the car from the Federal Government, acting in connection with Mrs. Kinney, and the subsequent sale thereof, as, in effect, a mere repossession under the conditional sales contract. Having obtained the car, they were at liberty to turn it over to Mrs. Kinney and permit her to proceed with the performance of the conditional sales contract. This they did not do, but chose to sell it, apparently with Mrs. Kinney's consent, which was, in effect, an election to exercise the right of repossession and sale given by the contract. The policy in question insured G. M. A. C. and Kendrick as their interests appeared and their insurable interests were the interests they had in being able to assert their liens on the car. This they did. Under the policy, the company had the right to return the car, if stolen, at any time before actual payment under the policy. Their measure of damage was therefore what it cost them to obtain possession of the car. The evidence establishes that this was $450 paid on the forthcoming bond and $104.83 attorneys' fees and expenses. The only loss to anyone, therefore, by reason of the theft was the $554.83 paid out to secure possession of the car, and this was the amount for which judgment should have been rendered.

The judgment is reversed with directions to enter a judgment for plaintiffs in the sum of $554.83 with interest, of which $172.60 with interest from the appropriate date should be apportioned to G. M. A. C. and the remainder to Kendrick.

The whole court sitting.