140 So.2d 78 (1962)
SUNNY SOUTH AIRCRAFT SERVICE, INC., a Florida Corporation, Appellant,
v.
AMERICAN FIRE AND CASUALTY COMPANY, a Florida Corporation, Appellee.
No. 61-340.
District Court of Appeal of Florida. Third District.
April 10, 1962.
Rehearing Denied May 2, 1962.
Worley, Gautier & Dawes and Lynn F. Lummus, Miami, for appellant.
Dean, Adams, Fischer & Gautier and Robert M. Sturrup, Miami, for appellee.
Before PEARSON, TILLMAN, C.J., and CARROLL and BARKDULL, JJ.
*79 CARROLL, Judge.
This was an action in the civil court of record in Dade County by the owner of an insured aircraft to recover for damage to the plane amounting to $2,452.08, under a policy which insured against loss from theft.[1] The cause was tried without a jury and resulted in a judgment for the defendant from which the plaintiff has appealed.
The determinative questions are whether the aircraft was the subject of a theft, and if so, whether either of two exclusionary provisions relied on was effective. The first of those provisions excludes losses not occurring "while the aircraft is within the United States of America."[2] The second provision excludes losses "due to war, whether or not declared, invasion, civil war, insurrection, rebellion or revolution * * *"[3]
The facts were stipulated in the trial court. St. Elmo Raymond Montayne, a qualified pilot, leased the aircraft in question from the appellant corporation for the purpose of transporting a passenger on a charter flight from Fort Lauderdale to Orlando. After becoming airborne, the passenger forced the pilot at gun point to depart from the flight plan and to proceed to a directed location in the interior of Cuba. A landing was made there in a pasture. The passenger alighted and joined certain persons who were there to meet him. The pilot took off to return to the United States. After gaining an altitude of approximately 4,000 feet he was overtaken by a Cuban military aircraft which attacked him and damaged the plane by gunfire. He escaped and made a forced landing. Rebel forces hid him and the plane for several days, after which he took off and returned to his point of departure in Broward County.
On those facts we conclude that the able trial judge was in error in holding that the plaintiff had failed to establish a loss recoverable under the policy.
The trial judge concluded that no theft was established because he viewed the facts to be such as to show an absence of intent on the part of the passenger to permanently deprive the plaintiff of its ownership of the aircraft. Appellant contends correctly that the proper rule to be applied is that a theft results where a natural consequence of the taking is an unreasonable risk of permanent loss to the owner. Thus, in Groover v. State, 82 Fla. 427, 90 So. 473, at 475, 26 A.L.R. 373, the Supreme Court of Florida said: "Any taking that may result by a natural and immediate consequence in the entire loss and deprivation of the property to the owner is larceny." See Perkins, Criminal Law 225 (1957); 2 Wharton Criminal Law & Procedure, Larceny § 454 (12ed. 1957).
It was said in Wharton, supra, at § 454, citing the Groover decision:
"* * * any taking that may result by a natural and immediate consequence *80 in the entire loss and deprivation of the property to the owner may be larceny, although the property is taken for temporary use."
Perkins, supra, at 225, states:
"It is also necessary to understand that there may be an intent to steal without a fixed purpose to deprive the owner of his property permanently. A wrongful use of a temporary nature is not sufficient for the intent to steal if it does not seriously imperil the owner's substantial rights in the property; but it is otherwise of a wrongful temporary use of a nature which intentionally creates an unreasonable risk of permanent loss to the owner."
Aside from the fact that there was military unrest in Cuba, the natural consequence of a passenger forcing a pilot at gun point to fly a domestic plane over 200 miles across the water and into a foreign country and to make a forced landing, is to impose on the owner an unreasonable risk of permanent loss of his aircraft. Therefore, the undisputed facts of this case demonstrate that a theft was committed.
Appellee argues that even if a theft of the plane occurred in Florida, the loss was occasioned in Cuba and from warlike activity, and, therefore, that the exclusionary provisions relied on bar recovery. That argument lacks merit because the theft took place in the United States, and it follows that the loss for which recovery is sought occurred, or must be considered to have occurred in the United States in and by the theft.
When an article insured against theft is stolen and the article is subsequently damaged under circumstances which, but for the theft, would fall within an exclusionary provision, the loss represented by such damage is recoverable under the provision against theft, and the exclusionary clause is inapplicable. General Exchange Ins. Corporation v. Kinney, 279 Ky. 76, 129 S.W.2d 1014, 122 A.L.R. 920. See Delametter v. Home Ins. Co., 233 Mo. App. 645, 126 S.W.2d 262; Guenther v. American Indem. Co., 246 Wis. 478, 17 N.W.2d 570.
General Exchange Ins. Corporation v. Kinney, supra, was an action on an insurance policy to recover for theft of an automobile. The defendant relied on exclusionary provisions against "loss or damage due to consfication or authorized destruction by duly constituted governmental or civil authorities" and loss "while used in any illicit or prohibited trade or transportation." The automobile was stolen and thereafter used for illegal transportation of liquor for which it was seized and confiscated by the government. In holding the exclusionary provisions inapplicable, the Kentucky Court of Appeals said (129 S.W.2d at 1017):
"* * * Undoubtedly the exclusionary provisions of the policy would have operated to defeat a recovery by the assured if the car had not been previously stolen, but certainly it is all out of reason to say that when a car has been stolen and loss under the policy thereby established, the thief may thereafter by any action on his part prevent a recovery on the policy for the theft. Such a construction would place the car owner at the whim of a thief as to right of recovery on a policy insuring against theft.
* * * * * *
"* * * We are of the opinion that loss under the policy accrued when the car was stolen and was not defeated under the exclusionary provisions by subsequent seizure and forfeiture by the Government on account of the illegal transportation of liquor therein by the thief."
This record reveals the theft occurred in Florida, and we hold the loss occurred when the theft took place. Total loss from the theft was avoided by the return of the *81 aircraft. Its condition, when returned, measured the amount of the loss.
For the reasons stated, the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
NOTES
[1] "Coverage J  Fire, Transportation, Theft and Windstorm

"To pay for all physical loss of or to the aircraft.
* * * * *
"2. While in flight caused by fire, explosion, lightning, theft, robbery or vandalism, excluding fire or explosion resulting from crash or collision of the aircraft with the ground, water or any object."
[2] "Under Coverages * * * J, this policy applies only to occurrances, and losses to the insured aircraft which are sustained, during the policy period, while the aircraft is within the United States of America, Canada or the Republic of Mexico, or is being transported between ports thereof, and is owned, maintained and used for the purposes stated as applicable thereto in the Declarations."
[3] "This Policy does not apply:

* * * * *
"(p) Under Coverages * * * J. * * * (3) to loss due to war, whether or not declared, invasion, civil war, insurrection, rebellion or revolution or to confiscation by duly constituted governmental or civil authority;"