Charles ALLEN

v.

COMMONWEALTH of Kentucky.

No. 2007–CA–002079–MR.

Court of Appeals of Kentucky.

March 6, 2009.

**650**

Linda Roberts Horsman, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Perry T. Ryan, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; WINE, Judge; BUCKINGHAM,[1] Senior Judge.

## OPINION

WINE, Judge.

Charles Allen ("Allen") appeals from a final judgment and sentence of the Ohio Circuit Court convicting him of eleven counts of first-degree sexual abuse and sentencing him to eleven years' imprisonment. Allen contends that he was denied a fair trial when (1) the trial court failed to strike a prospective juror who was biased; (2) the prosecution improperly bolstered a witness's testimony; (3) Allen was charged with multiple accounts of sexual abuse sub-

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

jecting him to double jeopardy; (4) the Commonwealth improperly questioned Allen on cross examination; and (5) prior bad acts were improperly introduced. Because we believe the trial court correctly denied each of the motions raised, we affirm the Ohio Circuit Court.

## I. FACTUAL BACKGROUND

On December 19, 2006, the grand jury charged Allen with one hundred counts of first-degree sexual abuse; one count of first-degree rape; and one count of incest. Allen pleaded not guilty. The charges arise out of a course of events which occurred over several years. The victim, S.P. ("S.P."), was six years old when her mother married Allen in 1994. A second child was born to this union in 1996. S.P. alleged that Allen began to sexually abuse her when the family moved to Ohio County in 2000. She was thirteen years of age.

The abuse began when Allen decided to "examine" S.P. to determine if she was a virgin. He threatened to beat her if she did not cooperate, so she allowed him to touch her vagina. Over time, other "examinations" were performed, including touching her breast to check for lumps, checking her for ticks, and touching her vagina with a vibrator to make sure everything "works right." On numerous other occasions he would touch her vagina, kiss her breast or simply ask her to undress so he could see her naked. Frequently he threatened to "whip" her or would claim it was an issue of trust to convince her to undress. Allen threatened to kill himself and her if S.P. ever revealed their relationship.

Between November 2002 and March 2004, S.P. wrote five letters to Allen expressing her love and admiration for him. In 2004, S.P. wrote to her fiancé and expressed concerns about her personal past. In 2006, S.P. told her pastor's wife as well as her fiancé that Allen had sexually abused her.

## II. VOIR DIRE

██ The trial began on August 16, 2007. During *voir dire,* the Commonwealth's attorney asked a number of questions meant to elicit comment from jurors regarding their ability to participate in a trial involving allegations of sexual abuse, rape, and incest. At the bench, Juror # 22 expressed a reluctance to participate in the proceedings if a child victim would be involved. When Juror # 22 indicated a generalized inability to be impartial, the court removed the prospective juror from the panel. Juror # 42 was called as a replacement.

Juror # 42 immediately asked to approach the bench and informed the court that he had been sexually abused as a teenager by his father. He advised he had "dealt with it pretty good" and that he had no problem listening to the evidence in the case. The court expressed its appreciation for Juror # 42's candor and again asked the prospective juror if he could set aside his own experiences and make a decision based entirely on the evidence presented against the defendant. Without hesitation the juror responded to both questions in the affirmative. The prosecutor asked no questions. Nevertheless, Allen's attorneys continued to ask specific questions about the prospective juror's own experiences and impressions. In response, Juror # 42 indicated to the court that he believed a young person could make false allegations of sexual abuse. He did not base this belief on any specific fact situation, but rather on his role as a pastor. When asked again by counsel whether he could keep an open mind and remain objective after hearing from the Commonwealth's witnesses, the juror responded, "That's the intention. That's the goal. Yes." When

asked to describe the type of abuse he had endured, the prospective juror remained silent for approximately 8 seconds and finally said, "I can't say what word to use, how to classify it. I won't use the word." He also stated that his abuser had not been prosecuted and would not be as far as he was concerned. Based on these responses, Allen's attorneys asked the court to strike the Juror # 42 for cause.

Allen's counsel contended that the challenged juror was unqualified to serve. Counsel argued that the Commonwealth's case against the defendant was strikingly similar to the situation involving Juror # 42's allegations as to his own father. Under these circumstances, counsel expressed a concern that the prospective juror would too closely identify with the prosecuting witness and suggested that he was very likely incapable of being objective because of his own life experience. The court refused to remove Juror # 42, and Allen's counsel was obliged to use a peremptory strike to remove him from the jury panel.

Following his trial, the jury found Allen guilty of eleven counts of first-degree sexual abuse. The court entered a judgment of conviction on September 10, 2007, sentencing Allen to 11 years imprisonment, and this appeal followed.

Allen argues that in light of the facts and circumstances, the trial court erred by failing to strike Juror # 42 for cause. The Commonwealth disagrees and contends that the discussion at the bench indicated that Juror # 42 could render a fair and impartial verdict despite his own exposure to abuse. Therefore, the Commonwealth believes that the court did not err in refusing to strike the challenged juror for cause. Instead, the Commonwealth argues that the exchange at the bench followed by the trial court's ruling served as a model illustration of counsel's exercise of a peremptory challenge.

▬ Kentucky Rules of Criminal Procedure (RCr) 9.36(1) provides that if there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, he shall be excused as not qualified (i.e., removed for cause). The trial court must weigh the probability of bias or prejudice based on the entirety of the challenged juror's responses and demeanor. *Pendleton v. Commonwealth*, 83 S.W.3d 522 (Ky.2002). A trial court's decision about whether to strike a challenged juror for cause is reviewed under the standard of abuse of discretion. *Adkins v. Commonwealth*, 96 S.W.3d 779 (Ky.2003). "A determination whether to excuse a juror for cause lies within the sound discretion of the trial court and is reviewed only for a clear abuse of discretion." *Soto v. Commonwealth*, 139 S.W.3d 827, 848 (Ky.2004); *Mills v. Commonwealth*, 996 S.W.2d 473 (Ky.1999), *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000).

▬ However, the decision to exclude a juror for cause is based on the totality of the circumstances, not on a response to any one question. See *Morgan v. Commonwealth*, 189 S.W.3d at 104 (Ky.2006), overruled in part on other grounds by *Shane v. Commonwealth*, 243 S.W.3d 336 (Ky.2007). It is the duty of the trial court "to evaluate the answers of prospective jurors in context and in light of the juror's knowledge of the facts and understanding of the law." *Stopher v. Commonwealth*, 57 S.W.3d 787, 797 (Ky.2001). The trial judge is in the best position "to observe the demeanor of the prospective jurors and understand the substance of their answers to voir dire questions[.]" *Mabe v. Commonwealth*, 884 S.W.2d 668, 671 (Ky. 1994).

In *Richardson v. Commonwealth,* 161 S.W.3d 327 (Ky.2005), the defendant was charged with multiple sex offenses including first-degree rape and first-degree sodomy. The defendant argued that the trial court erred in refusing to remove a juror for cause after she disclosed that she had been the victim of sexual abuse fourteen years earlier. The defendant claimed he had been prejudiced by such as he was required to use a peremptory strike. The Court held:

> The fact that a prospective juror has been a victim of a similar crime is insufficient, in and of itself, to warrant removal for cause. *Bowling v. Commonwealth,* 942 S.W.2d 293 (Ky.1997), *cert. denied,* 522 U.S. 986, 118 S.Ct. 451, 139 L.Ed.2d 387 (1997); *Butts v. Commonwealth,* 953 S.W.2d 943 (Ky.1997). Moreover, we find Appellant's reliance on *Montgomery v. Commonwealth,* 819 S.W.2d 713 (Ky.1991) misplaced. Unlike the juror in Montgomery, Juror 6 did not need to be rehabilitated. Other than admitting she had been a victim of a sex crime fourteen years earlier, Juror 6 made no statements indicating that she had any bias or preconceived opinions of Appellant's case. She unequivocally confirmed that she could fairly and impartially decide the case.
>
> The trial court was in the best position to evaluate Juror 6's demeanor and answers during voir dire. *Bowling, supra.* See also *Whalen v. Commonwealth,* 891 S.W.2d 86 (Ky.App.1995). We cannot conclude that the trial court abused its discretion in refusing to remove her for cause once she satisfied the court that she could objectively evaluate the evidence on all counts and render a fair verdict.

*Richardson* at 330–331.

In *Sanders v. Commonwealth,* 801 S.W.2d 665 (Ky.1990), a capital murder and robbery case, a potential juror volunteered he had been a robbery victim. The court then asked whether there was any reason why the juror could not be fair and impartial, to which he replied,

> "Only that I've been robbed myself with a gun put to my head ... I'm **a little paranoid over that, I think.**" When asked whether his experience would prevent him from being fair and impartial he replied, "I would hope not, but I never know." Defense counsel inquired whether, if a case involved a gun pointed at the victim's head and a robbery, the juror thought he could be objective and fair, to which he replied, **"Well, you always think you can be objective. People with mental problems think they can be objective, but they aren't."** Pursuing the possibility of bias, the court asked whether the juror could set aside whatever feelings he might have as a result of being a robbery victim and render a decision in this case upon the evidence heard. The juror replied, "I think I've come out of the trauma." The court, apparently satisfied that this juror was qualified, overruled the defendant's challenge for cause. Having reviewed the interrogation, we are unable to conclude that the trial court's ruling was clearly erroneous and an abuse of discretion.

*Sanders* at 670. (Emphasis added.)

In *Stoker v. Commonwealth,* 828 S.W.2d 619 (Ky.1992), the defendant was also charged with multiple sex offenses. Again there was an allegation of error when the trial court refused to excuse for cause a juror who revealed on questioning that her best friend's granddaughter had been abused and killed 14 years previously, a situation about which she had strong feelings.

> Another judge may have excused this juror for cause based on her answers,

but the question is whether in failing to excuse this juror the trial court abused its discretion. The juror's answers, when viewed in their entirety, suggest the juror was being **conscientious**, not showing bias. Ultimately, the juror assured those present that she could listen to the evidence and render a fair and impartial verdict. We have recently recognized that the decision regarding juror "[i]mpartiality is not a technical conception ... limited to the juror's response to a 'magic question,'" *Montgomery, Sherman and Hudson v. Commonwealth*, 819 S.W.2d 713 (Ky.1991). But here, when reviewed "in the totality of circumstances," the juror's responses were not such as to require disqualification. They do not compel the conclusion that the trial court abused its discretion. *Stoker* at 625–626. (Emphasis added.)

Finally, we believe that Allen's reliance on *Shane* is erroneous. Shane moved to strike a juror for cause who stated on *voir dire* that his past association with police officers would not affect his ability to be an impartial juror, but then went on to say that he had "an inside point of view"; that he was "absolutely" pro-police; that, while "police are just like everybody else", he did not believe they would lie under oath because they took the oath more seriously; and that he would find it more likely that a police officer was telling the truth than a lay witness. *Shane*, 243 S.W.3d at 337.

The trial Court refused to excuse the prospective juror for cause because the juror "... did not currently work with the two detectives and had no knowledge of the case." *Shane* at 338.

The answers of Juror # 42 in the case *sub judice* could not be more diametrically opposite than those of the juror in *Shane*. Juror # 42 immediately volunteered that he had been a victim of sexual abuse. He never opined in any way that he believed that Allen was guilty, that a sex abuse victim was more believable than an accuser, or that his personal experiences would have any effect on his decision making process. When pointedly asked by the court if he could set aside his experience and deliberate solely upon the evidence presented, he again responded affirmatively. The entirety of the responses of Juror # 42 suggested that while he had been deeply affected by his life experience as a victim of sexual abuse, he could remain fair and impartial. The prospective juror indicated that he felt that he had "dealt with that pretty good" and did not feel that he "had a problem with the case". After reviewing the entirety of his responses, one could not fairly and reasonably infer the presence of bias. In short, absent any indication of bias, we cannot find that the trial court erred in refusing to strike Juror # 42 for cause.

### III. Improper Bolstering of Testimony

■ During the cross-examination of S.P., Allen's counsel introduced five letters she had written to Allen. Basically, each letter expressed in favorable terms the relationship between S.P. and Allen. Subsequently, on redirect examination, the Commonwealth introduced two letters S.P. wrote to her fiancé. These letters insinuated there was a dark side to her past, portraying herself as a victim, who was having trouble dealing with the issues. S.P.'s pastor's wife was also allowed to testify that in the Spring of 2006 S.P. told her she had been sexually abused by Allen.

■ The Commonwealth defended the admission of these letters and testimony pursuant to Kentucky Rules of Evidence ("KRE") 801A(a)(2), which states:

A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is

examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is: (2) [c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

We agree the trial court properly allowed for the introduction of these letters and testimony. Where a witness has been assailed on the ground that the story is a recent fabrication or that she has some motive for testifying falsely, it is permissible to show that she gave a similar account when the motive did not exist, before the effect of such an account could be foreseen, or when the motive or interest would have induced a different statement. *Smith v. Commonwealth*, 920 S.W.2d 514, 517 (Ky.1995) (quoting *Eubank v. Commonwealth*, 210 Ky. 150, 275 S.W. 630, 633 (Ky.1925)). While during her testimony the word "fabrication" was not expressed, it was implied. Further, during his examination Allen accused S.P. of fabricating the allegations she made against him.

### IV. Double Jeopardy Based on Multiple Counts of Sexual Abuse

 At the close of the Commonwealth's proof, Allen moved for a directed verdict, arguing that he could not be convicted of multiple counts of sexual abuse arising out of touching different protected body parts within the same encounter. If there had been only one or two encounters, there would be merit to the appellant's argument. However, this abuse occurred over an extended period of years and Allen would sometimes touch S.P.'s vagina and breast, or one but not the other. Regardless, our courts have recognized that multiple offenses may occur when different body parts are touched within the same sexual assault. In *Van*

*Dyke v. Commonwealth*, 581 S.W.2d 563, (Ky.1979), the defendant argued two convictions of rape and the conviction of sodomy should be merged into a single conviction of rape because all of the offenses occurred during one continuous sexual assault against the same victim.

The evidence clearly discloses that Van Dyke committed three distinct offenses rape, sodomy and a second rape when he penetrated Mrs. Lyles' vagina to accomplish the first act of intercourse, penetrated her mouth to accomplish the act of sodomy, and thereafter penetrated her vagina to accomplish the second act of intercourse. The legislature intended to punish each separate act of rape or sodomy. The fact that the acts occurred in a brief period of time with the same victim and in a continuum of force does not protect Van Dyke from prosecution and conviction of each separate offense. E.g., *Lee v. State*, Tex.Cr.App., 505 S.W.2d 816, 818 (1974); *People v. Iverson*, 26 Cal.App.3d 598, 601–02, 102 Cal. Rptr. 913, 915–16 (1972); *State v. Hill*, 104 Ariz. 238, 450 P.2d 696, 697–98 (1969). See also *People v. Perez*, 23 Cal.3d 545, 153 Cal.Rptr. 40, 591 P.2d 63 (1979). See generally Note, Criminal Law Rape Multiple Offenses Severally Punishable, 44 Tenn.L.Rev. 388 (1977).

*Van Dyke* at 564–565.

Our standard of review governing jury instructions by a trial court is whether the court committed an abuse of discretion. *Ratliff v. Commonwealth*, 194 S.W.3d 258, 274 (Ky.2006) (citations omitted). Our Supreme Court has defined abuse of discretion as conduct by a court acting arbitrarily, unreasonably, unfairly, or in a manner "unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). Likewise, the standard of review applicable to a denial of a motion for directed verdict requires the

appellate court to consider the evidence in the strongest light possible in favor of the opposing party. *Taylor v. Kennedy,* 700 S.W.2d 415, 416 (Ky.App.1985). After completion of the evidentiary review, the decision must be affirmed unless the verdict rendered is "palpably or flagrantly" against the evidence so as "to indicate that it was reached as a result of passion or prejudice". The trial court carefully reconsidered Allen's arguments at the close of all the proof and ultimately instructed on only ten counts of first-degree sexual abuse, one count of first-degree rape, and a lesser included count of first-degree sexual abuse. The jury convicted Allen on ten counts of first-degree sexual abuse as charged, as well as the lesser included offense of first-degree sexual abuse rather than the charged offense of first-degree rape. They recommended the minimum sentence of one year on each count. We can not find the trial court abused its discretion in so instructing or that the jury's decision was based on passion or prejudice.

## V. Improper Cross-examination of Appellant

██ During the cross-examination of Allen, the prosecutor asked, "You don't think Ms. Donna had any reason to say something that isn't true, do you?" Following an objection, the question was rephrased and Allen was asked, "Do you know any reason that Ms. Donna would lie?" Allen responded, "No, I don't. But that still doesn't mean that I don't believe that S.P. is lying." It is difficult to determine from the record whether trial counsel properly preserved the objection to this line of questioning. Regardless, we do not believe the Commonwealth's line of questioning to be prejudicial. We recognize that our courts have strongly cautioned against a witness either improperly vouching for or challenging another witness's

testimony. *Moss v. Commonwealth,* 949 S.W.2d 579, 583 (Ky.1997). "With few exceptions, it is improper to require a witness to comment on the credibility of another witness. A witness's opinion about the truth of the testimony of another witness is not permitted. Neither expert nor lay witnesses may testify that another witness or a defendant is lying or faking. That determination is within the exclusive province of the jury." *Moss* at 579, citing *State v. James,* 557 A.2d 471, 473 (R.I. 1989). Here, Allen was not asked about the truthfulness of the allegations made by S.P., but whether he believed S.P.'s pastor's wife had truthfully testified as to what S.P. had told her. The question as rephrased does not go to the credibility of another witness as prohibited by *Moss,* but rather inquires about any bias that might exist on the part of the pastor's wife as to Allen. A question to illicit bias is perfectly acceptable on cross-examination. Thus, even if the issue was properly preserved, the trial court did not err by allowing the question.

## VI. Introduction of Prior Bad Acts

██ During the Commonwealth's direct examination, a police detective spontaneously remarked that two prior Emergency Protective Order ("EPO") actions had been filed against Allen. Defense counsel immediately objected and moved for a mistrial. The trial court agreed the comment was objectionable and sustained the objection, but denied the request for a mistrial. No additional relief was sought. A trial court's decision to deny a motion for mistrial will not be disturbed absent an abuse of discretion. *Gould v. Charlton Co., Inc.,* 929 S.W.2d 734 (Ky.1996).

There is no indication that the prosecutor deliberately elicited the statement from the witness. As here, where evidence of other crimes is introduced into evidence

through the non-responsive answer of a witness, this Court must look at all of the evidence and determine whether the defendant has been unduly prejudiced by that isolated statement. *Phillips v. Commonwealth,* 679 S.W.2d 235 (Ky.1984). Considering the entire record, we must conclude that Allen was not unduly prejudiced by the spontaneous comment of the detective. We therefore find the trial court did not abuse its discretion by refusing to grant a mistrial.

For the foregoing reasons, we affirm the judgment of the Ohio Circuit Court.

BUCKINGHAM, Senior Judge, concurs.

COMBS, Chief Judge, dissents and files separate opinion.

COMBS, Chief Judge, dissenting:

I write separately to dissent solely on the basis of the issue arising as a result of *Shane v. Commonwealth,* 243 S.W.3d 336 (Ky.2007).

This is undoubtedly a sordid case in which a child was outrageously abused and victimized. The court meticulously ruled correctly on one evidentiary issue after another. However, I am compelled to conclude that it committed reversible error (albeit unwittingly) in refusing to strike Juror # 42 for cause.

This case was tried and the judgment of conviction was entered in September of 2007. In December of 2007, our Supreme Court rendered the *Shane* decision, drastically altering Kentucky law on the issue of peremptory challenges so as to have sweeping ramifications in both civil and criminal cases. Essentially, the Supreme Court ruled that a court's failure to strike for cause results in the deprivation of a substantial right by forcing a party to use a peremptory challenge. The resulting error, formerly harmless, has become fatal in the wake of *Shane:*

Thus, the correct inquiry is not whether using a peremptory strike for a juror who should have been excused for cause had a reasonable probability of affecting the verdict (harmless error), but whether the trial court who abused its discretion by not striking that juror for reasonable cause deprived the defendant of a substantial right. Harmless error analysis is simply not appropriate where a substantial right is involved.... Here, the defendant did not get he trial he was entitled to get.

*Id.* at 341.

In the case before us, the tape revealed Juror # 42's behavior and responses to the court to be hesitant and ambivalent as to his ability to suppress his own life experience in the context of this trial for the sake of objectivity.

When Juror # 42 was selected to replace Juror # 2, he immediately **asked to approach** the bench and informed the court that he had been sexually abused as a teenager by his father. When questioned directly, however, the prospective juror did assure the court that he could set aside his own experiences and make a decision based entirely on the evidence presented against the defendant.

Nevertheless, Allen's attorneys pressed on and continued to ask specific questions about the prospective juror's own experiences and impressions. In response, Juror # 42 indicated to the court that he believed that a young person could make false allegations of sexual abuse. He also stated that he would not have been inclined to be involved in the prosecution of his abuser. When asked again by counsel whether he could keep an open mind and remain objective after hearing from the Commonwealth's witnesses, rather than responding affirmatively and with conviction, the juror instead responded, "That's

the intention. That's the goal. Yes." Based in part on this tentative response, Allen's attorneys asked the court to strike the Juror # 42 for cause.

Allen's counsel contended that the challenged juror was unqualified to serve. Counsel argued that the Commonwealth's case against the defendant was strikingly similar to situation involving Juror # 42's allegations as to his own father. Under these circumstances, counsel expressed a concern that the prospective juror would too closely identify with the prosecuting witness and suggested that he was very likely incapable of being objective because of his own life experience. The court refused to remove Juror # 42, and Allen's counsel was obliged to use a peremptory strike to remove him from the jury panel.

Prior to *Shane*, the court's error was harmless. Every case cited in the majority opinion pre-dates *Shane*. Since *Shane*, I am persuaded that despite the highly offensive outcome, Allen is entitled to a new trial. *Shane* has clothed the peremptory challenge with constitutional overtones virtually on a par with the *Miranda*[2] warning.

I find the result to be unpalatable but unmistakable in this case: *Shane* entitles Allen to a new trial. Accordingly, I would vacate and remand for a new trial.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).