Roy GIBSON and Clinton
Bowman, Appellants,

v.

KENTUCKY FARM BUREAU MUTU-
AL INSURANCE COMPANY; Gary
Speth, Sr.; and Fabian Gomez San-
chez, Appellees.

No. 2009–CA–000048–MR.

Court of Appeals of Kentucky.

July 9, 2010.

As Modified Dec. 3, 2010.

Robert W. Dyche, III (argued), London, KY, for appellants.

Perry Adanick (argued), Louisville, KY, for appellee Kentucky Farm Bureau Mutual Insurance Company.

No Brief for Gary Speth, Sr. and Fabian Gomez Sanchez.

Before ACREE, COMBS and WINE, Judges.

## OPINION

ACREE, Judge:

Appellants Roy Gibson and Clinton Bowman appeal the October 3, 2008 judgment of the Clay Circuit Court entered upon a jury's verdict finding them liable for fraud and ordering them to pay $43,778.53 to Appellee Kentucky Farm Bureau (KFB) and $14,000 to Appellee Gary Speth. For the following reasons we af-

firm in part, reverse in part, and remand for additional findings.

On June 24, 2005, Gibson and Bowman reported to KFB their 2000 Ford F150 had been stolen approximately three weeks earlier; KFB established the date of the loss as June 1, 2005. At the request of KFB, Gibson and Bowman filed a police report. Because they no longer possessed the vehicle's certificate of title, they also obtained a duplicate title. In accordance with the terms of their KFB insurance policy covering theft of the insured vehicle, Gibson and Bowman soon received a check in the amount of $17,291.50.

In late 2005, an individual named Rogelio Mendez attempted to register the vehicle. He presented the original certificate of title to the clerk; the back of the certificate showed that on March 22, 2005, Gibson and Bowman had executed an assignment of the title to Mendez and their signatures were notarized.[1] However, because the vehicle had been reported stolen, the clerk refused to permit Mendez to register the vehicle in his name. Police seized the truck and returned it to KFB. The insurer sold the truck for approximately $7,200.

Although KFB had recovered the vehicle Gibson and Bowman alleged was stolen, Mendez's title document cast doubt on the story Gibson and Bowman had told. KFB initiated an investigation to verify the representations its insureds had made that resulted in KFB's payment for the truck.

KFB's investigation yielded information that contradicted the representations made by Gibson and Bowman. Investigators learned that Mendez had actually obtained the vehicle from an individual named Gary

---

1. While the back of the Certificate of Title is denominated "Assignment of Title", the signature line is captioned "Signature(s) of Seller(s) To Be Notarized."

Speth. Speth believed he had legally acquired the truck from a man named Fabian Sanchez, a friend of Mendez. Sanchez had approached Speth seeking a loan on March 23, 2005, three months earlier than the date Gibson and Bowman had reported the truck stolen. At that time, Sanchez had possession of the truck and the original title that had been signed by Gibson and Bowman and their signatures notarized, but the transferee information was left blank. Believing Sanchez was in lawful possession of the truck, Speth agreed to loan Sanchez $7,000, keeping the truck as collateral. Speth did not attempt to register the title because he expected Sanchez to return and repay the loan with interest.

After Sanchez failed to repay the loan, Mendez expressed interest in purchasing the truck. Speth agreed to sell the truck to Mendez on or about September 23, 2005, and Mendez signed the Assignment of Title as the "Buyer." By the terms of the agreement between Speth and Mendez, payment was due after Mendez registered the truck in his name. As noted, however, Mendez was unable to register the vehicle despite making the attempt in both Kentucky and Indiana. The deal between Speth and Mendez was then off and Speth was never paid.

KFB investigator Daniel Keller was able to reach and interview Sanchez. Sanchez informed Keller that Gibson had sold him the truck in March 2005 and otherwise confirmed the information Speth provided regarding when and why Speth had come into possession of the truck.

Gibson and Bowman maintained that the truck was in their possession until it was stolen on or about June 1, 2005. Gibson claims that on or about that date he was traveling in the truck from Manchester, Kentucky, to Louisville and stopped for gas in Richmond when the truck's starter failed. He stated he left the truck at the home of a friend who promised to have a local shop repair it. He then arranged for other transportation and continued his trip to Louisville. Both Gibson and Bowman deny having signed the title document before a notary or delivering title or possession of the truck to a third person. Gibson explained that he did sign the title document, but that he did so several years before the alleged theft in anticipation of using the truck as collateral on a loan. He never went through with that loan, however.[2]

Believing it had been defrauded, KFB filed a complaint seeking a declaration of rights to the truck as against Sanchez and Speth and asserting a fraud claim against Gibson and Bowman. Gibson and Bowman were represented in the action by counsel and defended against the fraud claim. Speth appeared *pro se* with the benefit of some assistance from KFB's counsel. Sanchez was never served and did not appear in the action.

Following trial, a jury determined Gibson and Bowman had defrauded KFB and awarded KFB $43,778.53. The jury also awarded Speth $14,000.[3] This appeal followed.

Gibson and Bowman claim the circuit court erred as follows: (1) by failing to strike for cause jurors who were policy-

---

2. During trial, numerous discrepancies were revealed between the story Appellants told to KFB and the police in 2005 and their deposition testimony approximately a year later. This description is consistent with their earlier statements.

3. The jury was not instructed to determine whether Speth had been defrauded or to resolve the declaration of rights action.

holders of insurance issued by KFB; (2) by admitting hearsay testimony of out-of-court statements made by Sanchez; (3) by awarding KFB costs of investigating and prosecuting the claim; and (4) by awarding damages to Speth in absence of a finding he was defrauded and without proof of his loss. We address those assignments of error in that order.

### Jury Selection

■ "It is elementary that the determination of whether to excuse a prospective juror rests within the sound discretion of the trial judge and ought not to be set aside by a reviewing court unless the error is manifest." *Peters v. Commonwealth*, 505 S.W.2d 764, 765 (Ky.1974). We review the circuit court's determination with that standard in mind.

Gibson and Bowman claim the circuit court erred by overruling their motion to strike for cause prospective jurors who were also holders of KFB policies. They have also identified statements made by counsel for KFB and a witness, Keller, which they believe served to further bias the KFB policyholders on the jury. KFB does not directly respond to allegations that these statements biased the jury, presumably because Gibson and Bowman made no objection to these statements during trial. We separately address that issue, and the issue of preservation of error, *infra*. However, KFB does argue that the trial court's refusal to disqualify any of the policyholders was proper absent a showing of any individual juror's actual bias. We agree with KFB.

■ Kentucky courts have acknowledged juror-policyholders may become biased when those jurors are aware their insurer has an interest in the outcome of a case. *Planters Bank & Trust Company of Hopkinsville v. Deason*, 532 S.W.2d 16, 18 (Ky.1975). However, in *Planters Bank*, the Court did not indicate the juror would automatically be disqualified "[e]ven if the possibility of higher rates or lower dividends determined by the loss ratio of the company be considered a sufficient interest upon which to infer bias on the part of a policy holder who serves as a juror[.]" *Id.*; David J. Marchitelli, Annotation, *Prospective Juror's Connection With Insurance Company As Ground For Challenge For Cause*, 9 A.L.R.5th 102, § 6[e] (2010) ("The court [in *Planters Bank*] reserved the question of whether a juror's assessability or participation in dividends would amount to an interest sufficient to warrant a challenge for cause"). The burden of demonstrating bias remains "upon the party claiming bias or partiality[.]" *Polk v. Commonwealth*, 574 S.W.2d 335, 337 (Ky. App.1978), *citing Watson v. Commonwealth*, 433 S.W.2d 884 (Ky.1968). That burden is borne by questioning the suspect juror to reveal whether the juror's interest in the insurance company gives rise to an inference of bias sufficient to justify disqualification for cause.

■ The argument Gibson and Bowman present is that no KFB policyholder was capable of sitting as an unbiased juror in this case. That is, they argue the policyholders' status alone required striking them for cause. True, by statute, certain persons are subject to challenge for cause merely because of their status. *Howell v. Commonwealth*, 489 S.W.2d 21, 22–23 (Ky. 1972) (Former Kentucky Revised Statute (KRS) 29.025, now KRS 29A.080(2)(b), disqualifies felons from jury service; "a juror in such status is subject to challenge for cause"). However, this panel may not, by creating the bright line test suggested by this argument, take from the province of the trial court the discretion to determine the qualifications of any jurors in the venire not otherwise disqualified by KRS 29A.080(2).

We do not exclude the possibility that one or more jurors in this case may have had such a concern about their relationship with KFB that they might be deemed biased. However, we can only speculate as to the existence of actual bias because Gibson and Bowman simply did not inquire further into the matter during *voir dire* either with any individual juror or with the venire.[4] Relevant inquiries could have determined whether any particular juror had a concern that a judgment in the case would affect them personally. In this case, the only information about the juror-policyholders available to the trial court was that the potential for bias existed. Absent further indication from the *voir dire* that any juror, because of his or her relationship with KFB, was actually biased or would have difficulty fairly deciding the case, we cannot label the trial court's refusal to strike any jurors for cause an abuse of discretion.

■ Gibson and Bowman also maintain that, in light of certain jurors' status as policyholders, statements made by KFB's counsel and KFB's witness, investigator Keller, served to bias the juror-policyholders. No argument regarding those statements, however, was preserved for review. Gibson and Bowman did not object to any of the statements they have identified as problematic on this score. Our review is therefore for palpable error only. Kentucky Rule of Civil Procedure (CR) 61.02.

■ The statements at issue included assertions that "everybody" is affected by fraud and that KFB had an obligation to report suspicious claims to a state agency, to protect its policyholders, and to protect the public in general. References to KFB policyholders in particular were brief at most; the majority of the statements ad- dressed the effects of fraud on the people of Kentucky. Permitting these statements did not constitute palpable error, even in light of some of the jurors' status as policyholders.

*Hearsay evidence*

At trial KFB introduced certain of Sanchez's statements through its investigator, Keller, because Sanchez was unavailable to testify. The relevant portion of Keller's testimony was as follows:

> Mr. Sanchez told me that he had purchased the vehicle from Mr. Gibson during about the first week of March. He explained to me that he knew Mr. Gibson; they were both in the same profession, that is roofing, and that they were acquainted with one another, and Mr. Gibson had offered to sell him the vehicle on several occasions. On this particular occasion he took him up on it and he gave him $7,000 for the vehicle. Mr. Gibson gave him the original title, registration, as well as the vehicle. He also indicated to me at one point that Mr. Gibson had expressed an interest in maybe buying the vehicle back; he said he needed the money right away, but he may be interested in buying it back. Mr. Sanchez said to me that he tried to locate Mr. Gibson a couple of times to see if he wanted to buy it back, but he was unsuccessful. And then he himself needed money, so he sought out Mr. Speth through a friend and put up the vehicle as collateral for a loan.

Gibson and Bowman contend these statements should have been excluded because they do not qualify as hearsay exceptions. KFB argues they do so qualify, either as admissions of a party or as statements against the declarant's interest.

---

4. The attorney who pursued this appeal on behalf of Gibson and Bowman is not the same attorney who represented them before the circuit court.

■ "A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is ... [t]he party's own statement, in either an individual or a representative capacity[.]" Kentucky Rule of Evidence (KRE) 801A(b)(1). Sanchez, however, was not a party to the case before the jury, and his statements therefore do not qualify as admissions by a party. While Sanchez was named as a defendant in the complaint, he was named only in the context of the declaration of rights to the truck. At trial, the jury was not instructed to determine who the rightful owner of the truck was; the only instructions regarded the fraud claim.[5]

Additionally, the statements made by Sanchez to the investigator were not used against Sanchez. Rather, they were used against Gibson and Bowman in prosecution of the fraud claim. KFB never claimed that Sanchez had defrauded anyone. Therefore, Sanchez's out-of-court statements could not be permissibly introduced pursuant to this rule.

■ KFB also asserts the statements were admissible as statements against Sanchez's interest. KRE 804(b) permits the inclusion of certain out-of-court statements made by non-parties, including,

[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

KRE 804(b)(3). KFB contends Sanchez's statement that he purchased the car from Gibson on March 22, 2005, is a statement against Sanchez's interest because it could subject him to civil or criminal liability for fraud; KFB also asserts it was a statement against his proprietary interest because it could be used to rule against him in the declaration of rights action.

Had Sanchez's statement been that he accepted the car for the purpose of defrauding Speth or KFB, it would clearly be admissible as a statement against his interest because it would potentially render him criminally or civilly liable for fraud. As it stands, however, Sanchez's statement was more a defense to fraud charges than an admission—that is, it is a statement that he received the truck legally in exchange for money and that he transferred it to Speth legally. It was error to admit the statement under this theory.

■ As a statement against Sanchez's proprietary interest, the testimony appears at first blush to be admissible. Sanchez's statement that he had used the truck as collateral on a loan he never repaid was effectively a disavowal of any ownership interest he may have had in the vehicle. However, courts are wise to be wary of such statements: "Statements may appear from their content to be against the interest of the declarant but when examined in light of context have

---

5. Counsel for KFB, in his opening statement to the jury, said one of the issues in the case was determining who owns the truck; however, there was no instruction on that matter. It was not an issue before the jury. The only options the jury was given were to find either for KFB and Speth and therefore against Gibson and Bowman, or for Gibson and Bowman and against KFB and Speth. It is unclear from the record why the issue of the truck's ownership was not presented to the jury.

self-serving characteristics." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.45[3] (4th ed.2003). Those self-serving characteristics vitiate the rationale that the hearsay evidence is reliable.[6] *Id.*

In the context of Keller's interview with Sanchez, it becomes clear the statements at issue were actually self-serving. Keller was conducting the interview to determine which scenario was accurate: (1) that Sanchez stole the truck and then used it as collateral on a $7,000 loan, or (2) that Gibson had legally conveyed the truck to Sanchez and then fraudulently reported it stolen. Given those options, it was decidedly in Sanchez's interest to state he acquired the truck from Gibson in a legal manner and then left it with Speth. The conversation with Keller was therefore inadmissible as statements against the declarant's interest.

■■■ In light of the other evidence of fraud, however, any error in admitting Sanchez's statements to KFB's investigator was harmless. Sanchez's statements were discussed only briefly at trial, and the other evidence against Gibson and Bowman was strong. Speth testified he received the truck from Sanchez in March 2005, well before Gibson and Bowman reported it missing, and KFB introduced the notarized title which supported that testimony. As an official act, a notarized document cannot be attacked absent direct proceedings against the notary or "the allegation of fraud in the party benefited thereby or mistake on the part of the [notary]." KRS 61.060. While Gibson and Bowman both testified they never signed the title before a notary, they also did not assert the signed, notarized title

was the result of fraud on the part of either Sanchez or Speth. In the absence of such an allegation, the notarized document cannot be challenged. The document is therefore conclusive on the issue; paired with the testimony of Speth and Keller, it renders harmless any error in admitting the hearsay evidence.

### Award of costs

■■■ Gibson and Bowman next assert the award of $33,700 for the cost of investigating the claim, including attorney fees, had insufficient legal and factual basis to survive its motion for a directed verdict. KFB contends costs of investigation were properly awarded as compensatory damages.

> In ruling on ... a motion for a directed verdict ..., a trial court is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion. Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence.

*Taylor v. Kennedy,* 700 S.W.2d 415, 416 (Ky.App.1985). In reviewing the denial of a directed verdict, this Court must "consider the evidence in the strongest light possible in favor of the opposing party." *Allen v. Commonwealth,* 278 S.W.3d 649, 656 (Ky.App.2009).

The jury was instructed to award damages as follows:

> If you find for the Plaintiff, Kentucky Farm Bureau Mutual Insurance Company and Gary Speth ..., you will determine from the evidence and award a sum of money that will fairly and rea-

6. The rationale is "that when one makes a declaration in disparagement of his own rights or interests it is generally true, and because it is so the law has deemed it safe to admit evidence of such declarations[.]" Lawson § 8.45[2], *citing Mercer's Adm'r v. Mackin,* 77 Ky. 434, 441–42 (1879).

sonably compensate Kentucky Farm Bureau Mutual Insurance Company for such of the following damages as you believe from the evidence that it has sustained:

a. The amount paid by Kentucky Farm Bureau Mutual Insurance Company for the truck (not to exceed $10,078.53) ...

b. Reasonable costs and expenses related to the investigation of this claim (not to exceed $33,700.00) ...

c. Reasonable damages for Gary Speth[.]

Keller testified that total "investigative costs" for this matter included attorney fees and legal expenses greater than $16,000, expenses for transcriptionists and court reporters of about $1,200, and the cost of his investigation of about $16,500, for a total of $33,700.

■■■■ We first address the recoverability of attorney fees, which were included in the total award for the cost of investigation. The "American rule" is that attorney's fees are not recoverable in the absence of a statutory or contractual provision to the contrary, or with certain equitable exceptions. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717–18, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Kentucky follows the American rule. *See Kentucky State Bank v. AG Services, Inc.*, 663 S.W.2d 754, 755 (Ky. App.1984). Compensatory damages are "designed to equal the wrong done by the defendant." *Jackson v. Tullar*, 285 S.W.3d 290, 297–98 (Ky.App.2007). Attorney fees, however, do not compensate the plaintiff for any wrong done by the defendant. *Id.*

■■■■ It is the responsibility of the trial court, and not the jury, to determine the availability and amount of attorney fees. *See Inn–Group Management Services, Inc. v. Greer*, 71 S.W.3d 125, 130 (Ky.App.2002) ("What constitutes a reasonable attorney fee ... is an issue of law when the attorney and/or client seeks to recover a reasonable attorney fee from an opposing or third party."); *see also Kentucky State Bank*, 663 S.W.2d at 755 (citing the "equitable rule that an award of counsel fees is within the discretion of the court depending on the circumstances of each particular case."). It was improper in this case to instruct the jury on the issue of attorney fees or to enter judgment for such an award based on the jury's verdict. This was a determination the trial court, in its discretion, should have made. We therefore remand this matter to the circuit court for a determination of whether attorney fees were warranted in light of a statute, contractual provision, or equitable consideration, and, if so, what amount is reasonable.

■■■■ Our attention turns now to the other costs of investigation awarded by the jury. Gibson and Bowman acknowledged at oral argument that Kentucky law does not prohibit the recovery of investigative expenses as a matter of law.[7] We agree. *See* RESTATEMENT (SECOND) OF TORTS § 549 *Measure Of Damages For Fraudulent Misrepresentation* (1977 & 2010 supp.) (a party deceived by "a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including ... (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation."); *see also* KRS 304.47–020(3) (allowing all persons, including insurers, who are victims of

---

**7.** Their brief implied the opposite argument. Counsel, however, affirmatively waived its as-

sertion during oral argument.

fraud "to recover compensatory damages, *plus all reasonable investigation and litigation expenses,* including attorneys' fees" where appropriate).

■■■■ We find unavailing their argument that there was no competent evidence to support the award of investigation expenses. This argument focuses on the lack of specificity of the evidence KFB presented in support of the claim for consequential damages. Specifically, their objection is that "[t]here was no itemization, no definitive numbers, just a series of ... estimates" offered by KFB's investigator. However, while Kentucky law does not tolerate uncertainty as to the *fact* of damage (*i.e.,* recovery will not be had where there is uncertainty as to whether the damage has in fact occurred), once the existence of some damage is certain, uncertainty as to the *amount* of that damage will not defeat recovery. As this Court held in *Johnson v. Cormney,* 596 S.W.2d 23 (Ky.App.1979), *overruled on other grounds by Marshall v. City of Paducah,* 618 S.W.2d 433 (Ky.App.1981),

> [a]ll recoverable damages are subject to some uncertainties and contingencies, but it is generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount. Where it is reasonably certain that damage has resulted, mere uncertainty as to the amount does not preclude one's right of recovery or prevent a jury decision awarding damages.

*Johnson* at 27; *see also Hanson v. American National Bank & Trust Co.,* 865 S.W.2d 302, 309 (Ky.1993) (to the same effect), *overruled on other grounds by Sand Hill Energy, Inc. v. Ford Motor Co.,* 83 S.W.3d 483, 495 (Ky.2002). Thus, Kentucky law does not require KFB to provide exact calculations of its damage—an estimation may suffice if it proves damages with "reasonable certainty."

In this case, there was no challenge, either by objection or cross-examination, that the misrepresentation was not the legal cause of any particular expense or that any expense was unreasonable as to the amount. In the absence of that challenge, and in light of the cited authority, KFB has met its burden in this matter. We see no reason to affect the jury's award.

### Award to defendant Gary Speth

■■■ Gibson's and Bowman's final ground for appeal is that the award of $14,000 to Speth was improper. More specifically, they argue their motion for a directed verdict should have been granted because the evidence did not support the conclusion Gibson and Bowman defrauded Speth. We agree.

■■■ The six elements of common-law fraud are: "(a) a material representation, (b) which is false, (c) known to be false or made recklessly, (d) made with inducement to be acted upon, (e) acted in reliance thereon, and (f) causing injury." *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 (Ky.App.1978), citing *Crescent Grocery Co. v. Vick,* 194 Ky. 727, 240 S.W. 388 (1922). Speth could not prove all of these elements because he did not "act in reliance" upon any representation Gibson and Bowman made. All witnesses were in agreement that Speth never met or communicated with either Gibson or Bowman prior to trial. The critical misrepresentation alleged at trial was the insureds' claim that the truck had been stolen, and the jury instructions reflected this.[8] There

8. The relevant portion of the Instruction 1 read, "You will find for the Plaintiff Kentucky

Farm Bureau Mutual Insurance Company and for Gary Speth if you are satisfied by

was no evidence Gibson or Bowman made this representation to Speth or that he relied upon it. This constitutes a complete absence of proof on an essential element of fraud. The circuit court should properly have granted Gibson's and Bowman's motion for a directed verdict on this matter, and we therefore reverse the circuit court's denial of that motion.

### Conclusions

The circuit court's refusal to strike for cause prospective jurors who were Kentucky Farm Bureau policyholders was not erroneous, and the judgment will not be reversed on that ground. While we find that the admission of the out-of-court statements of Fabian Sanchez was error, we will not reverse the judgment on that ground as the error was harmless. We hold that the award of KFB's investigative costs were recoverable consequential damages the amount of which was proven with reasonable certainty and we will not reverse on that ground. However, we reverse the judgment to the extent of the jury's award to KFB of attorney fees and remand the case for a judicial determination as to the propriety and amount of an award of attorney's fees. Finally, we reverse the judgment to the extent of the award of $14,000 to Gary Speth because such judgment is not supported by substantial evidence.

ALL CONCUR.

clear and convincing evidence as follows: a. That the Defendant Roy Gibson made representations *to Kentucky Farm Bureau Mutual Insurance Company* that his truck was stolen on or around June 1, 2005[.]" (emphasis added) Instruction 1A was identical, but substituted Clinton Bowman for Roy Gibson.