KENTUCKY ASSOCIATION OF COUNTIES ALL LINES FUND TRUST, Appellant,

v.

Phillip McCLENDON, Daryl Wilson, Howard Hansford, James Cothron, Kenneth Earl Hicks, James D. Slaughter and Ralph Troxtell, in Their Capacities as Magistrates of the Pulaski Fiscal Court; and Pulaski County, Kentucky, Appellees.

No. 2002–SC–0648–DG.

Supreme Court of Kentucky.

March 17, 2005.

See also 967 S.W.2d 1.

Pamela Adams Chesnut, Robert E. Maclin, III, McBrayer, McGinnis, Leslie & Kirkland, Lexington, Counsel for Appellant.

William M. Thompson, Pulaski County Attorney, Jeffrey Scott Lawless, Travis, Pruitt & Lawless, Somerset, Counsel for Appellees.

Opinion of the Court by Justice KELLER.

## I. ISSUE

In *Allen v. McClendon*,[1] we determined that the magistrate members of the Pulaski County Fiscal Court unlawfully in-

creased their salaries. Upon remand, the trial court entered a judgment requiring the magistrates to repay the improper salary increases. Now, in this postscript to *Allen*, the magistrates maintain that their liability insurer, Kentucky Association of Counties All Lines Fund Trust ("KALF"), was required to defend and indemnify them against the underlying claim seeking repayment of the salary increases. Because the underlying claim was neither for the commission of a tort nor for the breach of a fiduciary duty, and thus was not covered under the insurance policy issued by KALF, we hold that KALF did not have a duty either to defend or to indemnify the magistrates. We, therefore, reverse the Court of Appeals and reinstate the trial court's summary judgment in favor of Appellant.

## II. BACKGROUND

In 1993, Phillip McClendon, Daryl Wilson, Howard Hansford, James Cothron, Kenneth Earl Hicks, James D. Slaughter, and Ralph Troxtell (collectively "Magistrates") were elected to five-year terms as magistrates on the Pulaski County Fiscal Court beginning in January 1994. In April 1994, the Magistrates voted to double their monthly salaries from $600.00 to $1,200.00, effective July 1994. In response to the salary increases, People for Ethical Government, Inc. ("PEG") filed a complaint alleging that the Magistrates had violated KRS 64.530[2] and sections 2,[3] 161,[4]

1. 967 S.W.2d 1 (Ky.1998).

2. KRS 64.530 provides, in pertinent part: "(1) ... [T]he fiscal court of each county shall fix the compensation of every county officer.... (4) In the case of county officers elected by popular vote ... the monthly compensation of the officer ... shall be fixed by the fiscal court ... not later than the first Monday in May in the year in which the officers are elected, and the compensation of the officer shall not be changed during the term .... (6) ... The fiscal court shall fix the

amount to be received within the above limit, but *no change of compensation shall be effective as to any member of a fiscal court during his term of office.*" (emphasis added).

3. Ky. Const. § 2 provides, "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

4. Ky. Const. § 161 states, "The compensation of any city, county, town or municipal officer shall not be changed after his election or

and 235[5] of the Kentucky Constitution by increasing their salaries during their terms. The complaint demanded that the Magistrates return the salary increases that they had received to the county coffers.

The trial court granted summary judgment in favor of the Magistrates and upheld the salary increases. This Court accepted transfer from the Court of Appeals and held that under KRS 64.530 the Magistrates could not give themselves pay increases beyond an adjustment based on the Consumer Price Index.[6] Accordingly, we reversed the trial court's decision and remanded the case to the trial court, which then appropriately entered a judgment requiring the Magistrates to repay the unlawful part of the salary increases that they had at that time received for several years.

Upon the initial filing of PEG's lawsuit, the Magistrates demanded that KALF, their and Pulaski County's liability insurer, defend them against the claim and confirm coverage for any judgment that might be entered against them. KALF declined to defend the Magistrates and denied coverage. After judgment was entered against them, the Magistrates again requested coverage from KALF. In response, KALF filed the present action seeking a declaration that its policy did not cover the judgment entered against the Magistrates and that KALF was not required to reimburse Pulaski County for its defense of the Magistrates. Subsequently, the trial court granted KALF a summary judgment on

the grounds that the Magistrates' liability for the illegal salary increases did not arise either from the commission of a tort or from the breach of a fiduciary duty, which are the only actions covered by the insurance policy. In accordance with that determination, the trial court additionally concluded that the judgment against the Magistrates did not constitute "damages" arising from a tort or from a breach of a fiduciary duty. For these reasons, the trial court found that KALF had no duty to defend or to indemnify the Magistrates. But the Court of Appeals held that the Magistrates were entitled both to a defense and to coverage, and it reversed the trial court.

### III. ANALYSIS

PEG's complaint in the underlying action against the Magistrates alleged, in relevant part, that the "action of the Defendants in doubling their pay as Magistrates of the Pulaski Fiscal Court violates Section 64.530 of the Kentucky Revised Statutes and Sections 2, 161 and 235 of the Kentucky Constitution and other applicable law." The complaint sought "[j]udgment . . . requiring the Defendants, individually, to repay Pulaski County all money they have received as a result of this illegal increase in the Magistrates' salaries."

The Court of Appeals ruled that PEG's claim against the Magistrates "sounded in tort" and that since KALF"s policy provided coverage for torts, the Magistrates' actions fell within the scope of activity cov-

---

appointment, or *during his term of office;* nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed." (emphasis added).

**5.** Ky. Const. § 235 states, "The salaries of public officers *shall not be changed during the terms for which they were elected;* but it shall

be the duty of the General Assembly to regulate, by a general law, in what cases and what deductions shall be made for neglect of official duties. This section shall apply to members of the General Assembly also." (emphasis added).

**6.** *Allen,* 967 S.W.2d at 3–4.

ered under the policy. Before this Court, the Magistrates continue to maintain that PEG's lawsuit alleged the commission of a tort, namely, "the tort of trover or conversion, or perhaps both,"[7] and therefore, PEG's claim against them falls within the policy's coverage.

KALF contends that the policy's terms do not provide coverage for the claims stated in the complaint because it did not allege the commission of a tort by the Magistrates. The "denial of coverage" letter from KALF's claims representative set forth the reasons for its denial of coverage:

> We have been informed by the Kentucky All Lines Fund that as the plaintiff[s] in this case merely ask for Declaratory Relief and ask the Court to require the defendants to return the "illegal" increases in their salaries, the Coverage Agreement will not apply. You will note that the Coverage Agreement indemnifies the insured for torts for which money damages are sought. The plaintiffs in this case are not alleging a tort nor are they seeking money damages as damages are defined.

 "Terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured."[8] But this "rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with ... the plain meaning and/or language in the contract."[9] When the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced.[10]

KALF's policy, a general liability policy, provides coverage to the Magistrates for claims brought against them for torts and for violations of their fiduciary duties. Under the section of the policy captioned "Coverage Agreement," the policy reads:

II. *COVERAGES*

 A. KALF, at its election, will pay either as reimbursement to the member or on behalf of the member all sums which the member shall become legally obligated to pay as damages because of the commit-

---

**7.** "Trover" is "[a] common-law action for the recovery of damages for the *conversion* of personal property ...." BLACK'S LAW DICTIONARY 1513 (7th ed.1999) (emphasis added). It is also termed "trover and conversion." *Id.* Today, it is called "conversion." 1 DAN B. DOBBS, THE LAW OF TORTS § 59 (West Group 2001).

**8.** *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 279 (Ky.1991) (citing *Fryman v. Pilot Life Ins. Co.,* 704 S.W.2d 205 (Ky.1986)).

**9.** *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.,* 870 S.W.2d 223, 226 (Ky.1994).

**10.** *Am. Nat'l Bank v. Hartford,* 442 F.2d 995, 999 (6th Cir.1971) (citing *Independence Ins. Co. v. Jeffries', Adm'r,* 294 Ky. 690, 172 S.W.2d 566 (1943); *Gen. Exchange Ins. Corp. v. Kinney,* 279 Ky. 76, 81, 129 S.W.2d 1014, 1017 (1939)) ("[U]nder Kentucky law unambiguous and clearly drafted exclusions which are not 'unreasonable' are enforceable."); *see also Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.,* 82 S.W.3d 869, 873–874 (Ky. 2002) (quoting *Diamaco, Inc. v. Aetna Cas. & Sur. Co.,* 97 Wash.App. 335, 983 P.2d 707 (1999)) (" 'Because coverage exclusions are "contrary to the fundamental protective purpose of insurance," they are "strictly construed against the insurer" and "will not be extended beyond their clear and unequivocal meaning." But that strict construction should not overcome "plain, clear language resulting in a strained or forced construction." ' ").

ment of a tort ... by the member or its employee except as excluded hereinafter ....

....

C. KALF shall pay on behalf of any employee for claims brought against such individuals for torts committed by such persons or for alleged violations of such person's fiduciary duties in their public official capacity ... except as restricted hereinafter.

KALF has no duty to defend any suit brought for the collection of money owed or claimed to be owed by the member; ... or defend any action challenging the constitutionality or legal validity of any ordinance.

....

D. KALF shall have the right and duty to investigate any claim and to defend any suit seeking damages for such claim against a member, or any other person to whom KALF has assumed a duty under Sections A and C of this Article, even if any of the allegations of the suit are groundless, false or fraudulent, and shall make such investigation and settlement of any claim or suit as it deems expedient. In the event the claim includes allegations of an intentional tort, KALF shall still have we [sic] the duty to defend such claim or suit but shall not be liable for that portion of any judgment due to the claim having been found to be the result of an intentional tort.

The policy defines the following relevant terms:

I. DEFINITIONS

....

B. Claim means a demand for money naming the member or other person(s) protected under Article II of this Coverage Agreement and alleging the commission of a tort or violation of a fiduciary duty by or on behalf of the member ....

....

D. Employee means:

3. any executive officer, administrator, supervisor or member of a governing body of the member, whether appointed or elected

....

while acting within the scope of his or her duties as such.

The Coverage Agreement (or "Agreement") governs KALF's responsibilities to the Magistrates.[11] Article II(A) of the Coverage Agreement does provide coverage for torts. "Tort" is defined in Article I(J) of the Agreement as "a civil wrong other than a breach of contract or warranty for which money damages other than court costs and related attorney fees are sought from the wrongdoer of [sic] its principal." Thus, if the underlying action "sounds in tort" and is not otherwise excluded by the Coverage Agreement, then the policy does provide coverage. Conversely, if the underlying action is based on a breach of contract or warranty or is expressly excluded by the terms of the Coverage Agreement, it does not sound in tort and is not covered under the policy.

■■■■ The Magistrates argue that coverage should be extended because the complaint states a cause of action for the tort of conversion. We disagree for two reasons. First, the complaint does not

---

**11.** *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.,* 550 S.W.2d 554, 557 (Ky.1977) ("[A]n insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms.").

allege that PEG owned the money used for the salary increase and allegedly converted by the Magistrates, nor does it allege that PEG had possession of the property or the right to possess it at the time of the claimed conversion.[12] Regardless, "[c]onversion is an intentional tort"[13] and "[t]here is no such thing as a conversion by accident."[14] The Magistrates do not claim that they intentionally violated KRS 64.530 and for good reason: intentional torts and intentional violations of a statute or constitutional provision are specifically excluded by the Coverage Agreement:

## V. COVERAGE EXCLUSIONS

A. Coverage under this Agreement does not apply to:

1. To a claim arising out of the willful or intentional violation of a statute, ordinance or constitutional provision;

2. To a claim resulting from an intentional tort or an act intended to cause injury or damages[.]

"Intentional tort" is defined in Article I(J) of the Agreement as,

A tort which was committed with knowledge that committing the act was wrong or expected to produce a wrongful act or knowingly failing to correct a wrongful act after discovery .... Intentional tort additionally means any action or inaction by the member or its employees in violation of any ordinance, regulation, statute or constitutional provision ....

For the Magistrates' actions to be conversion, the acts must have been intentional. If their actions were intentional, then coverage is specifically excluded as outlined above. Regardless, we find that the underlying action did not sound in tort. Second, we believe that the underlying action is more analogous to an action for breach of contract than one for conversion. PEG claims in the underlying action that the Magistrates violated KRS 64.530 and sections 2, 161, and 235 of the Kentucky Constitution—provisions that establish the Magistrates' salaries and limit their ability to increase their own salaries. The Magistrates are elected county officers and their salaries are controlled by KRS 64.530 and the Kentucky Constitution. And as Judge Waddle noted in Stone v. Pryor,[15] "we further find from the debates of the convention that the framers of the constitution regarded that when a citizen [i]s elected to an office to which there [i]s a salary attached, fixed by law, he [i]s to be regarded as having entered into a quasi contract with the people to serve for the compensation he expect[s] to receive ...."[16] A "quasi-contract," also termed an "implied-in-law contract," is "an obligation imposed

---

**12.** 90 C.J.S. *Trover and Conversion* § 4 (2004) ("The elements necessary to prove a conversion claim established in case law are: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.")

**13.** 1 DAN B. DOBBS, THE LAW OF TORTS § 62 at 128 (West Group 2001).

**14.** *Id.*

**15.** *Stone v. Pryor,* 103 Ky. 645, 45 S.W. 1136 (1898).

**16.** *Id.* at 666, 45 S.W. at 1137 (Waddle, J., dissenting), cited approvingly in *Talbott v. Thomas,* 286 Ky. 786, 804–805, 151 S.W.2d 1, 10 (1941) (Miller, J. and Malin, J., concurring).

by law because of the conduct of the parties, or some special relationship between them, or because one of them would otherwise be unjustly enriched."[17] Consequently, by taking office, the Magistrates entered into a quasi-contract with the people of Pulaski County to serve for a monthly salary of $600.00. By increasing their salaries, the Magistrates breached this quasi-contract. It is this breach of which PEG complains. Accordingly, we hold that the Magistrates did not commit a tort by enacting the salary-increase ordinance and receiving additional compensation, but rather, their actions constituted a breach of their quasi-contract-for which the policy does not provide coverage.

██ Additionally, we would note that PEG's lawsuit was in essence a collection action on behalf of Pulaski County seeking to recoup from the Magistrates the salary increases that it claimed the Magistrates had wrongfully paid themselves as a result of enacting an invalid ordinance; it did not otherwise seek damages against the Magistrates for a civil wrong. The policy provides that "KALF has no duty to defend any suit brought for the collection of money owed or claimed to be owed by the member; ... or defend any action challenging the constitutionality or legal validity of any ordinance." Thus KALF was not required to defend the Magistrates from PEG's claim.

██ The Magistrates rely heavily on the general principle of contra proferentem, that is, that the policy should be construed against the insurer as drafter of the document. However, where there is no ambiguity, the rule of liberal construction in favor of the insured is inapplicable.[18] As it has been stated numerous times by the courts in this Commonwealth, courts cannot enlarge coverage or make new contracts under the guise of construction, but must determine the parties' responsibilities according to the contract terms.[19]

██ The Magistrates are mistaken that the Agreement is ambiguous and is therefore subject to interpretation. We would point out that "[a] non-existent ambiguity [should not] be utilized to resolve a policy against" an insurer.[20] It is not enough for one party to claim ambiguity. " 'The mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily

17. BLACK'S LAW DICTIONARY 322 (7th ed.1999).

18. *Frear v. P.T.A. Indus., Inc.,* 103 S.W.3d 99 (Ky.2003).

19. *Pa. Cas. Co. v. Elkins,* 70 F.Supp. 155, 159 (E.D.Ky.1947) ("[T]he Court may not impose new or different liabilities upon the insurer under the guise of interpretation or construction."); *Jett v. Doe,* 551 S.W.2d 221, 223 (Ky.1977) (citing *Mullins v. Nat'l Cas. Co.,* 273 Ky. 686, 117 S.W.2d 928 (1938)) ("[O]nce such a condition is clearly expressed in the policy and agreed upon by the parties, the courts must give it full force and effect and abstain from making a new or different contract under the guise of interpretation at the instance of the disappointed party."); *Weaver v. Nat'l Fidelity Ins. Co.,* 377 S.W.2d 73, 75 (Ky.1964) ("[C]ourts cannot make a different insurance contract for the parties by enlarging the risks contrary to the natural and obvious meaning of the existing contract."); *Cheek v. Commonwealth Life Ins. Co.,* 277 Ky. 677, 686, 126 S.W.2d 1084, 1089 (1939) ("[C]ourts cannot make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon by them.").

20. *Meyers v. Ky. Med. Ins. Co.,* 982 S.W.2d 203, 208 (Ky.App.1997); *see also St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.,* 870 S.W.2d 223, 226 (Ky.1994) ("Neither should a nonexistent ambiguity be utilized to resolve a policy against the company.").

create an ambiguity.' " [21] And there is no ambiguity in the Coverage Agreement. It provides coverage for torts with the exception of intentional torts and intentional violations of statutes, ordinances, or constitutional provisions; it does not provide coverage for a breach of contract or a defense to a collection action.

■■■■ The Magistrates also assert that coverage should be extended on the basis of the reasonable expectation doctrine because parties in good faith do not bargain for insurance that pays no benefits. "Under the 'doctrine of reasonable expectations,' an insured is entitled to all the coverage he may reasonably expect to be provided *according to the terms of the policy.*" [22] " 'Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.' " [23] In at least two separate sections, the Agreement excludes coverage for statutory and constitutional violations and throughout the Agreement it is abundantly clear that the coverage extends only to torts and not to a breach of contract. These exclusions are "unequivocally conspicuous, plain and clear." [24]

Relying on *Busbee v. Reserve Insurance Co.,*[25] the Court of Appeals determined that insurance policies for municipal officers covered the claims made here. This reliance on *Busbee,* however, is misplaced. There, a "faithful performance bond" provided indemnification to the state—not the employee—for "[l]oss caused the [state] through the failure of any of its employees . . . to account properly for all monies and property received by virtue of his position or employment." [26] At his behest, a state employee received an unauthorized salary increase and the state received a judgment against the employee for the amount of the increase. The state, however, was unable to obtain satisfaction of its judgment, so it sued the bond's surety. The *Busbee* Court held that the employee, "by failing to disgorge the sums he had received in the form of his unauthorized salary increase, did not account properly for monies received by virtue of his position or employment." [27] Thus, the state was entitled to recover the increase from the surety. This holding is consistent with the general rule that a surety is liable under such a bond.[28] Here, the policy—which is a general liability policy, not a faithful performance bond—understandably does not contain a failure-to-account provision; thus, *Busbee* is not relevant in the analysis of the KALF Coverage Agreement.

**21.** *True v. Raines,* 99 S.W.3d 439, 443 (Ky. 2003) (quoting *Sutton v. Shelter Mutual Ins. Co.,* 971 S.W.2d 807, 808 (Ky.App.1997)) (alterations in original).

**22.** *Hendrix v. Fireman's Fund Ins. Co.,* 823 S.W.2d 937, 938 (Ky.App.1991) (citing *Woodson v. Manhattan Life Ins. Co.,* 743 S.W.2d 835, 839 (Ky.1987)) (emphasis added).

**23.** *Simon v. Cont'l Ins. Co.,* 724 S.W.2d 210, 212 (Ky.1986) (citation omitted).

**24.** *Id.*

**25.** 243 Ga. 371, 254 S.E.2d 324 (1979).

**26.** *Id.* at 325.

**27.** *Id.* at 325.

**28.** 63C AM. JUR. 2D *Public Officers and Employees* § 357 (2004) ("Under a bond providing indemnification for loss caused through the failure of a public officer to faithfully perform his duties or to account properly for all moneys and property received by virtue of his position or employment, the action of a public officer in seeking and receiving an unauthorized salary increase or in refusing to return overpayments of salary constitutes a breach of the bond and renders the surety liable, since the failure to disgorge the sums the officer received as unauthorized salary constitutes a failure to properly account for moneys received by virtue of his position or employment." (footnotes omitted)).

The Court of Appeals also mentions two other cases from other jurisdictions in which coverage was extended to claims against municipal officers. In *City Council of City of Elizabeth v. Fumero*,[29] coverage was afforded to a municipal officer over the exclusions in a collective bargaining agreement because the exclusions were contrary to a statute. The only statute used to argue for coverage in the case at hand is the Claims Against Local Government Act.[30] Unlike the statute in *Fumero*, however, this Act does not require this Court to ignore the unambiguous and clearly drafted exclusions in the Agreement. The exclusions are not contrary to public policy or statute, and thus *Fumero* is inapplicable.

In the second case, *Graham v. James F. Jackson Associates, Inc.*,[31] the insurance policy provided coverage for negligent infliction of injury resulting in death, but excluded coverage for criminal acts. A city police officer was convicted of involuntary manslaughter, a criminal act which was excluded from coverage. This particular criminal act, however, could also be characterized as negligent infliction of injury resulting in death, for which coverage would be provided. Because of this conflict, the Court of Appeals of North Carolina determined that the policy was "reasonably susceptible to more than one construction and must be construed in favor of providing coverage."[32] While this Court agrees that ambiguities are construed in favor of coverage, we can find no ambiguity in KALF's Coverage Agreement. The Agreement provides coverage for torts and specifically excludes coverage for a breach of contract and any intentional action or inaction in violation of a statute or constitutional provision.

The final issue is whether KALF breached any duty to defend under the Agreement. In Kentucky, an insurer has a duty to defend if there is an allegation which might come within the coverage terms of the insurance policy, but this duty ends once the insurer establishes that the liability is in fact not covered by the policy.[33] As previously discussed, coverage under the Agreement did not extend to the Magistrates' actions. We believe this is readily evident from a comparison of the complaint in the underlying action and the Agreement. The claims were clearly and expressly excluded and thus KALF appropriately declined to defend the allegations.

## IV. CONCLUSION

We hold that KALF did not have a duty either to defend or to indemnify the Magistrates. Accordingly, we reverse the Court of Appeals and reinstate the judgment of the Pulaski Circuit Court.

COOPER, GRAVES, JOHNSTONE, SCOTT and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion.

29. 143 N.J.Super. 275, 362 A.2d 1279 (1976).

30. KRS 65.200 et seq.

31. 84 N.C.App. 427, 352 S.E.2d 878 (1987).

32. *Id.* at 881.

33. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky.1991); *see also Thompson v. West Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky.App. 1992) (citing *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521 (Ky.1987)) ("The allegations of the complaint cannot compel a defense if coverage does not exist. The obligation to defend arises out of the insurance contract, not from the allegations of the complaint against the insured."); *Ky. Farm Bureau Ins. Co. v. Cann*, 590 S.W.2d 881, 883 (Ky.App.1979) (explaining that there is no duty to defend claims expressly excluded).

Dissenting Opinion by Chief Justice LAMBERT.

The pivotal question that this Court has failed to address is whether a claim in tort or a claim for breach of fiduciary duty was brought against Appellees, magistrates of the Pulaski County Fiscal Court, thereby contractually obligating Kentucky Association of Counties, All Lines Fund Trust (KALF), to indemnify and to provide them a legal defense. The majority opinion erroneously concludes that the underlying action brought by People for Ethical Government against Appellees did not sound in tort, a contractual exclusion from KALF's legal obligation to defend and indemnify Appellees. Because People for Ethical Government's complaint can be characterized to allege tortious conduct and a potential breach of fiduciary duties, and because indemnity and liability insurance coverage should be broadly applied, I would affirm the Court of Appeals.

The People for Ethical Government opposed the self-approved salary increase of members of the Pulaski County Fiscal Court and filed a declaration of rights action alleging that the magistrates had tortiously exercised dominion and control over funds belonging to the Pulaski County government or to the taxpayers. The People for Ethical Government also alleged that the magistrates violated their fiduciary duties. Appellees immediately contacted KALF, their insurer, and requested legal defense and indemnification for any damages assessed. KALF refused to indemnify or defend Appellees. In 1998, this Court held that the magistrates' salary increases were improper.[1] On remand, the Pulaski Circuit Court ordered Appellees to pay money damages and required them to refund the amount of the salary increases. Appellees again requested that KALF provide a defense and indemnification for the amount of money damages, and KALF filed this declaration of rights action.

The duty of an insurer to fulfill the terms of its contract to defend is broad and extends to "any allegation which potentially, possibly or might come within the coverage of the policy."[2] Whether a potential action is actually pursued or proves meritorious is immaterial to the insurer's duty to defend.[3] "The duty to defend continues to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy, and not merely that it might not be."[4] Moreover, public policy mandates that the language of an insurance contract be liberally construed so as to afford coverage with respect to defense and indemnification.[5]

In *Brown Foundation*, we held that an insurer was required to provide a defense for a wood preservation treatment plant where the cause of action for environmental claims by a federal agency could possibly come within terms of the contract provisions.[6] We denied application of coverage exclusions for intentional acts contained within the insurance agreement.[7] We noted that such exclusions cannot subvert an insurer's duty to defend be-

1. *Allen v. McClendon*, 967 S.W.2d 1, 3–4 (Ky. 1998).

2. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky.1991).

3. *Id.*

4. *Id. citing* 7C Appelman, Insurance Law and Practice § 4683.01 at 69 (Berdal Ed.1979).

5. *Healthwise of Kentucky, Ltd. v. Anglin*, 956 S.W.2d 213 (Ky.1997).

6. *Id.* at 275.

7. *Id.* at 277.

cause the "insured is entitled to all coverage he may reasonably expect under the policy", and only a clear manifestation of an insurer's intention to exclude coverage on that grounds will defeat its contractual obligation to provide coverage.[8] Here, there was no clear manifestation of intent to exclude coverage for the Pulaski County magistrates while acting in their capacities as public officials. Notably, several jurisdictions enforce insurance agreements to provide legal defense and indemnification for public officials' unauthorized salary increases.[9]

Moreover, this is a specific case where it is possible to characterize the complaint to allege tortious conduct or breaches of duty. The Pulaski Circuit Court held that the magistrates had made an error, but that it was not a breach of fiduciary duty. The specific tort or fiduciary duty claim against Appellees stems from their failure to adequately research statutory law and the law applicable to decisions of members of a fiscal court, i.e., KRS 64.530, and §§ 2, 161, and 235 of the Kentucky Constitution. Such decisions require a certain amount of expertise and diligence before being made. In this case, the magistrates' actions were not intentionally tortious. Their actions were more akin to negligence in that they made an uninformed decision. While the members of the fiscal court are fiduciaries of the county and the people for whom they serve, they are required to exercise

due care and act in the best interests of the county when making decisions, they are not held to a standard of perfection.[10] Permitting an insurance company that charged and received premiums to avoid coverage of public officials exercising their best judgment, regardless of the outcome of the decision, would stalemate public business from being conducted. Public officials deserve the peace of mind to know that when they conduct public affairs within their official capacities they will be afforded a legal defense and indemnity even if those decisions prove to be imprudent.

The exclusion from coverage is also inapplicable because this was not a case of intentional tort. The magistrates relied upon an order of the Pulaski Circuit Court granting summary judgment when they decided to retain the salary increases. And there is no indication in the record of any willful or knowing violation of law. However, even if the Appellees committed an intentional tort and suffered a judgment to that effect, KALF still would be required to defend them up and until that judgment was satisfied.[11] I agree with the Court of Appeals that the record shows that money damages were sought in this case and that KALF has a contractual obligation to both defend and provide indemnification to Appellees. The only windfall in this situation is the one improperly bestowed on KALF,[12] as it has eluded

---

8. *Id.*

9. *Busbee v. Reserve Ins. Co.*, 243 Ga. 371, 254 S.E.2d 324 (1979) (holding that insurance surety bond had an obligation to indemnify a state board of corrections officer for failure to relinquish sums of money received following an improper salary increase, which constituted a failure to properly account for "monies received by virtue of his position or employment"). *See Elizabeth v. Fumero*, 143 N.J.Super. 275, 362 A.2d 1279 (1976); *Graham v. James F. Jackson Assoc., Inc.*, 84 N.C.App. 427, 352 S.E.2d 878 (1987).

10. *Chicago Park Dist. v. Kenroy, Inc.*, 78 Ill.2d 555, 37 Ill.Dec. 291, 402 N.E.2d 181 (1980); *United States v. Holzer*, 816 F.2d 304 (7th Cir.1987) *rev'd on other grounds by Holzer v. United States*, 484 U.S. 807, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987).

11. *Id.*

12. This Court has noted that insurance law should apply equally to parties capable of affording the burden of a legal defense as well as those that are unable. We held in *Brown Foundation* that "[t]he vast majority of Ken-

a contractual obligation to defend and indemnify several public officials who exercised imprudent judgment.

tucky insurance policy holders are not able to accept such a burden, and it may well be that they are unable financially to defend a claim and prosecute an action on the policy. The doctrine of reasonable expectations remains a viable one in Kentucky." 814 S.W.2d at 280.