CUNNINGHAM, J., DISSENTING:
I respectfully dissent.
The issue in this case turns on the definition of the term "flood" under the insurance *13 policy's exclusions section. We review the interpretation of insurance contracts de novo. Cincinnati Ins. Co. v. Motorists Mut. Ins. Co. , 306 S.W.3d 69, 73 (Ky. 2010). Under the reasonable expectations doctrine, an ambiguous insurance contract term will be construed in favor of the insured. If no ambiguity exists, then the terms of the contract will be enforced. Kentucky Ass'n of Cntys. All Lines Fund Trust v. McClendon, 157 S.W.3d 626, 630 (Ky. 2005).
Under the insurance policy at issue, coverage excluded "water damage" caused by a "flood," "regardless of the cause" of said flood. The term "flood" is not defined within the policy. Where a term does not have a technical meaning within the law and is not defined within an insurance policy, it is defined by its ordinary meaning. Cincinnati, 306 S.W.3d at 74 (internal citation omitted).
Black's Law Dictionary defines a "flood" as "[a]n inundation of water over land not usually covered by it. Water which inundates area of surface of earth where it ordinarily would not be expected to be." Flood, BLACK'S LAW DICTIONARY 640 (6th ed. 1990). This plain meaning definition does not specify whether the inundating water must be from a natural source. Similarly, the Merriam-Webster Dictionary defines the noun "flood" to include "a rising and overflowing of a body of water especially onto normally dry land; a condition of overflowing ... an overwhelming quantity or volume." Flood, MERRIAM-WEBSTER DICTIONARY (November 7, 2018), https://www.merriam-webster.com/dictionary/flood.
In contrast, Comley argues that "flood" is an ambiguous term that should be interpreted against the drafter to only exclude coverage for natural floods. However, the term is modified by the phrase "regardless of the cause," which entails that the "cause" does not have to be natural. As such, the meaning of "flood" in this clause of the contract includes natural and artificial occurrences. Therefore, the unambiguous language of the policy must be enforced as written, excluding coverage for floods from natural or artificial occurrences.
Here, the "flood" was caused by an artificial occurrence: leaking water from a ruptured water line. The water damage to Comley's property, caused by a flood of water from an outside source, like the ruptured water line, is excluded from coverage. Thus, policy coverage does not apply to the property damage which Comley suffered.
Further, although the policy does expressly insure against personal property damage caused by the "[a]ccidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance," Homeowners Policy Form 3 at 8, it implies that coverage is for the internal, domestic plumbing system of Comley's residence. As further proof, the policy goes on to exclude coverage for personal property loss "caused by or resulting from water from outside the plumbing system that enters through sewers or drains" and overflows the house's sump pump or other subsurface water removal system.
Thus, the policy excludes personal property damage caused by the discharge of water from an external ruptured water main that is "outside the plumbing system."
For the foregoing reasons, I dissent from the majority opinion.
Keller, J., joins.