RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0168-DG

LINDA DAVIS                                                       APPELLANT

                  ON REVIEW FROM COURT OF APPEALS
V.                               NO. 2019-CA-0850
                  WAYNE CIRCUIT COURT NO. 18-CI-0224

PROGRESSIVE DIRECT INSURANCE                      APPELLEE
COMPANY

**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING</u>**

Linda Davis appeals the Court of Appeals' holding which excluded from the definition of a "motor vehicle" or "trailer" a horse-drawn wagon, for purposes of insurance coverage. Finding that the policy underwritten by Progressive Direct Insurance Company was unambiguous and did not violate Davis's reasonable expectations when she purchased her motorcycle coverage, we affirm.

## I. Factual and Procedural Background

The material facts are not disputed. While driving her motorcycle in Wayne County, Davis encountered a horse-drawn buggy operated by Danny Gingerich. Unfortunately, as Davis was approaching Gingerich, the horse became spooked and jumped into oncoming traffic. Consequently, Davis collided with the horse and was gravely injured.

At the time of Davis's accident, her motorcycle was insured by Progressive. As members of the local Amish community neither Danny Gingerich, nor his father Abe, carried any form of insurance; either on their farm, or on the horse-drawn wagon. Progressive denied Davis's claim under the uninsured motorist provision of her motorcycle coverage on grounds that a horse-drawn wagon was neither a "motor vehicle" nor a "trailer of any type" as defined by the policy language.

Davis brought suit in Wayne County, seeking to enforce the uninsured motorist provision in her policy. Progressive sought, and the Wayne County Circuit Court granted, Progressive's motion for summary judgment, on the basis that Abe Gingerich's horse-drawn wagon did not qualify as a "motor vehicle" or "trailer of any type" under the terms of the policy. The Court of Appeals affirmed, and we granted discretionary review to resolve the dispute.

## II. Standard of Review

On appeal, the standard of review for a summary judgment is to ascertain whether the trial court correctly determined that no genuine issue of material fact existed, entitling the moving party to judgment as a matter of law. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky. 2010). In conducting our review, we give no deference to the rulings below because only legal questions are involved. *De novo* review extends to the trial court's interpretation of the insurance contract as a matter of law. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010).

## III. Analysis

Davis makes two primary arguments on appeal. The first is grounded squarely in the following policy language:

> If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury;
>
> 1. sustained by an **insured person**;
>
> 2. caused by an accident; and
>
> 3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle.**

(Emphasis original). In the "Additional Definitions" sections of the policy, Progressive defined "**uninsured motor vehicle**" as "mean[ing] a land motor vehicle or trailer of any type[.]" Crucial to Davis's claim is her conclusion that a horse-drawn buggy qualifies as a "trailer of any type." We disagree.

In reviewing the merits of Davis's policy language argument, we note that terms in insurance contracts do not have any technical legal meaning and must be interpreted as a lay consumer would understand the policy. *Ky. Ass'n of Cnties. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005). During our review we look to see whether a term is ambiguous. If two reasonable interpretations exist, the interpretation favoring the insured prevails. *Id.* Of course, failing to define a term does not always, or even often, result in an ambiguity. Instead, the crux of our analysis is to determine and accord the term at issue its ordinary and everyday meaning. *Id.*

Davis's assertion that a buggy qualifies as a trailer is mistaken for several reasons. The first is that the horse and buggy operate as a single unit,

3

with the buggy functioning as a passenger compartment would in a sedan or SUV. Nothing is trailing because the horse and buggy are integral to one another. Secondly, and more directly, even if we accepted Davis's description, our common understanding of what a trailer is belies her position.

> The word "trailer" is defined generally as meaning one who or that which trails. The term is applied to a variety of vehicles, and in the motor vehicle law a trailer is a separate vehicle which is not driven or propelled by its own power, but which, in order to be useful, must be attached to, and become a part of another vehicle.

87 C.J.S., *Trailer* (1954). By contrast, the corresponding definition for "buggy" is "a small, light, four-wheeled horse-drawn carriage."[1] While Davis correctly points out that Progressive's choice of terminology, "trailer of any type," is broader than the controlling definitions in the rest of the policy,[2] the difference here is one of kind and not degree. Simply put, a trailer is generally understood as something separate from, and pulled by, another vehicle. The horse and buggy do not the meet the common understanding of a trailer.[3]

Davis's claims under Kentucky's Motorized Vehicle Reparations Act (MVRA) fail because of the same categorical deficiencies in her contract argument. KRS[4] 304.39-010, *et seq.* The MVRA defines a "motor vehicle" as

---

[1] *Buggy,* American Heritage Dictionary of the English Language. (1975).

[2] Progressive defines two types of trailers in the "General Definitions" section of the policy: (1) "'**Trailer**' means a non-motorized trailer designed to be towed on public roads by a **motorcycle**;" and (2) "'**Transport trailer**' means a non-motorized trailer designed to be towed on public roads by a land motor vehicle and principally designed for transporting a **covered motorcycle**."

[3] A scenario could arise in which a horse-drawn vehicle, whether a buggy or wagon, has a trailer attached to it. Whether that might meet the definition of "trailer of any type" we do not decide since those facts are not before us.

[4] Kentucky Revised Statutes.

"any vehicle which transports persons or property upon the public highways of the Commonwealth, propelled by other than muscular power...." KRS 304.39-020(7). In an attempt to broaden the scope of the statutory definition wide enough to encompass a horse and buggy, Davis casts the explanation of KRS 304.39-020(7) in *O'Keefe v. N. Am. Refractories*, as including all modes of transportation that are primarily used to operate on public highways. 78 S.W.3d 760, 762 (Ky. App. 2002). As the Court of Appeals opinion below correctly explained, Davis's assertions are unsupported.

In *O'Keefe*, our Court of Appeals contemplated whether a forklift was a "motor vehicle" under the MVRA. Specifically, the court in *O'Keefe* examined whether a forklift should be treated as construction equipment, which the MVRA explicitly excluded, or a "motor vehicle," and ultimately concluded that the forklift was not a "motor vehicle" under the MVRA because while the forklift was capable of operating on a highway, that was neither a practical use of the forklift, nor its primary function. *Id.*

In fact, *O'Keefe* does not contemplate Davis's factual circumstance at all because the operative language in KRS 304.39-020(7) at issue in this case is whether the horse and buggy is "propelled by other than muscular power," and not whether a certain type of "vehicle" is a "motor vehicle" under the MVRA. Consequently, *O'Keefe* does not compel the result Davis seeks. Instead, we dismiss Davis's argument on the plain language of the statute. As the Court of Appeals explained, the purpose of including "propelled by other than muscular power" was to limit the applicability of the MVRA to vehicles that were self-

5

propelled by an internal motor. No ambiguity exists in the language, and any discussion trying to create an ambiguity by questioning whether the statute referred to human or animal muscles is entirely irrelevant.

Finally, we address Davis's public policy argument. Davis argues, and we agree, that testimony provided by the Gingeriches clearly shows that the horse and buggy was the primary mode of highway transportation for the local Amish community. Davis asserts that she reasonably expected the horse and buggies she encountered on the highway to be subject to the same "rules and regulations as other vehicles operating on the public roads of the Commonwealth." However, Davis concedes that by the policy's own terms her position is counterintuitive. Consequently, given Davis's failure to present a meaningful ambiguity in the contract, or show evidence of a reasonable expectation of coverage, so as to implicate public policy concerns, we are compelled to deny her final argument.

In doing so, we note that we have traditionally reserved discussions of reasonable expectations to circumstances in which the petitioner has pointed to an ambiguity in the contract. *Metzger v. Auto-Owners Ins. Co.*, 607 S.W.3d 695, 699 (Ky. 2020); *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). Our reasoning for requiring an ambiguity is simple; when the policy language clearly lays out the duties and expectations of the parties, the contract is their clearest evidence of intent and enforcing the terms of the contract is certainly an important interest of the Commonwealth.

6

Additionally, the General Assembly has already made itself clear, in the MVRA, by explicitly excluding "muscle" powered modes of transportation. In the absence of legislative action, we adhere to the reasoning of our predecessor court in *Rosenbaum v. Safeco Ins. Co. of America*, which held that the primary inducement for uninsured motorist coverage is to protect insureds from damage by vehicles "on which liability insurance is customarily carried." 432 S.W.2d 45, 47 (Ky. 1968). Davis cannot point to, and no statute supports, the proposition that horse and buggy operators customarily purchase insurance policies. Consequently, without clear language in the policy we do not presume that Progressive is pioneering the field.

### IV. Conclusion

For the reasons discussed above, the Court of Appeals' opinion affirming the trial court's summary judgment in favor of Progressive is affirmed.

All sitting. Minton, C.J.; Conley, Hughes, Keller, Nickell and VanMeter, JJ., concur. Lambert, J., dissents without separate opinion.


COUNSEL FOR APPELLANT:

William Matthew Garmon
Garmon & Ramsey, PLLC


COUNSEL FOR APPELLEE:

Timothy Leigh Mauldin
Bell Orr Ayers & Moore, P.S.C