RENDERED: AUGUST 19, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1066-MR

UNIVERSITY OF LOUISVILLE                                              APPELLANT

APPEAL FROM FRANKLIN CIRCUIT COURT
v.          HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 21-CI-00009

KENTUCKY SCHOOL BOARDS
INSURANCE TRUST AND CYRIL
WILLIAM HELM                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE: University of Louisville (the University) has appealed from

the August 16, 2021, summary judgment of the Franklin Circuit Court in favor of

Kentucky School Boards Insurance Trust (KSBIT) regarding KSBIT's duty to

provide a defense and indemnification in a separate circuit court case pursuant to a

policy of insurance. We affirm.

KSBIT is a domestic insurer that was created in 1978 to provide liability coverage to educational entities via a non-profit self-insurance pool of funds. KSBIT went into rehabilitation under the supervision of the Commissioner of the Department of Insurance in 2013. In 2006, KSBIT issued a general liability insurance policy (GL 7/2006 Edition) to the University, which was renewed for several years. The Coverage B section of the policy addresses coverage for personal and advertising liability, and Section I(B)(1)(a) provides in relevant part that "[w]e [KSBIT] will pay those sums that the Member [the University] becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this coverage part applies." In the definitional section of the policy, Section V(10) defines "personal injury" as:

> [I]njury, other than 'bodily injury,' arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of a private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

> e. Oral or written publication of material that violates a person's right of privacy; or
>
> f. Mental injury, mental anguish, shock, humiliation, defamation, and damage to professional reputation.

A renewed policy was in place from July 1, 2009, through July 1, 2010.

The underlying matter began with the filing of a petition for a declaratory judgment by KSBIT in the Franklin Circuit Court, Division I, in January 2021 related to the above policy. In this action, KSBIT sought a declaration pursuant to Kentucky Revised Statutes (KRS) 418.040 that it did not have any obligation under the insurance policy to defend or indemnify the University as a result of a Kentucky Whistleblower Act claim filed by Dr. Cyril Helm (*Helm v. University of Louisville*, Jefferson Circuit Court Case No. 15-CI-01410). Dr. Helm's dispute with the University began in 2009, after his colleagues had alleged he had committed plagiarism or other misconduct in his research. Dr. Helm went on to file several lawsuits against the University and his colleagues arising from the misconduct allegations and the University's investigation into whether he had engaged in misconduct, including the one noted above.

As to the subject lawsuit, Dr. Helm alleged that he had suffered a personal injury, and KSBIT provided a defense to the University subject to a reservation of rights. In his fourth amended complaint, Dr. Helm pled a Kentucky Whistleblower Act claim for which he alleged damages, including substantial

-3-

losses in earnings, job experience, and benefits; damage to his academic reputation; and emotional and physical stress. He sought compensatory and punitive damages as well as costs and attorney fees. On September 18, 2018, the Jefferson Circuit Court ruled that Dr. Helm could not recover damages for mental anguish/pain and suffering, front pay, or from having to sell his house in a certain market. It also dismissed Dr. Helm's claim for punitive damages. The only remaining claims were for back pay and attorney fees. Because Dr. Helm's claims for back pay and attorney fees did not arise from a personal injury as defined in the policy, KSBIT alleged in the declaratory action that there was no longer any factual or legal basis under the policy requiring it to defend or indemnify the University in Dr. Helm's underlying suit. Therefore, KSBIT sought a declaration of rights that it did not have an obligation to further defend or indemnify the University for the claims Dr. Helm asserted in his underlying action.

In its response to the petition for declaratory judgment, the University disputed KSBIT's allegations and pled several affirmative defenses, including the failure to state a cause of action against it or to name indispensable parties. It sought dismissal of the petition. In a separate response, Dr. Helm also defended against the petition.

In April 2021, KSBIT filed a motion for summary judgment, arguing that there were no disputed issues of material fact to resolve and that it was entitled

to a judgment as a matter of law. In the memorandum in support of the motion, KSBIT argued that the damages Dr. Helm was legally permitted to recover did not implicate the policy's definition of personal injury, meaning that there was no longer any factual or legal basis for it to provide coverage.

In its response, the University argued that the plain language of the policy required KSBIT to provide coverage, pointing to the "arising out of" language in the policy; that summary judgment was premature as it had not had ample opportunity to complete discovery; and that the order granting summary judgment by the Jefferson Circuit Court was interlocutory as it was not final and appealable and was therefore subject to revision.

In reply, KSBIT argued that a Whistleblower action arises out of retaliation, not slander or libel. Because Dr. Helm's Whistleblower claim arose from the non-renewal of his contract, not from slanderous allegations made by another professor, the insurance policy did not trigger any duty for KSBIT to defend or indemnify the University. It also argued that there were no factual disputes and that the interpretation of an insurance contract is a matter of law to be decided by the court. Therefore, no discovery was necessary to resolve the legal matter before the court. Finally, KSBIT argued that there was no likelihood that the Jefferson Circuit Court decision would be reversed on appeal.

The motion was scheduled to be heard on August 9, 2021. Counsel for the University appeared in Division I, but no one appeared on behalf of KSBIT. The court opted to take the matter under submission, with the proviso that it might call the parties back for oral arguments after it had reviewed the briefs. A few minutes later in Division II, counsel for KSBIT (but not for the University) appeared in Division II to address the pending motion for summary judgment, noting that the matter had been fully briefed. The court indicated that it would take the matter under submission.

Shortly thereafter, on August 13, 2021, the declaratory judgment action was *sua sponte* transferred from Division I to Division II. And on August 16, 2021, the circuit court (in Division II) entered an order granting summary judgment to KSBIT, rejecting the University's arguments and holding that KSBIT was not required to provide a continuing defense to the University. This appeal now follows.

Our standard of review is set forth in *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016):

> Summary judgment is a remedy to be used sparingly, *i.e.* "when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (citations omitted). We frequently caution, however, the term "impossible" is to be used in a practical sense, not

-6-

in an absolute sense. *See id*. (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992)). The trial court's primary directive in this context is to determine whether a genuine issue of material fact exists; if so, summary judgment is improper, *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). This requires that the facts be viewed through a lens most favorable to the party opposing summary judgment, here the Estate. *Id*. It is important to point out that "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id*. at 482.

A motion for summary judgment presents only questions of law and "a determination of whether a disputed material issue of fact exists." *Shelton*, 413 S.W.3d at 905. Our review is de novo, and we afford no deference to the trial court's decision.

As KSBIT states, there are no issues of material facts to decide. Therefore, we shall review the circuit court's decision *de novo*.

We shall first address the University's argument that summary judgment was premature as it had not had the opportunity to complete discovery. The circuit court rejected this argument because the issue before it only involved the interpretation of an insurance contract, and there were no factual disputes to decide. In addition, the University failed to provide any information about what discovery it intended to obtain.

In its brief, the University cites to *Suter v. Mazyck*, 226 S.W.3d 837, 841 (Ky. App. 2007), to argue that summary judgment "is proper only after the

party opposing the motion has been given ample opportunity to complete discovery and then fails to offer controverting evidence." And the University states that it provided controverting evidence from the Jefferson Circuit Court case demonstrating that KSBIT was not entitled to summary judgment. However, we agree with KSBIT that the issue before the circuit court in the present case addressed the interpretation of contractual language, which is a matter of law to be decided by a court. *See Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. App. 2000) ("As a general rule, interpretation of an insurance contract is a matter of law for the court.").

The University also argues that it was not provided with the opportunity to orally argue its position before the circuit court or request a hearing. While the circumstances were certainly strange, with counsel for the parties originally appearing before different divisions, the University did not move the circuit court to hear oral arguments once the matter was transferred to Division II, nor did it seek reconsideration once the summary judgment was granted. As this issue was not raised below, we shall not consider it on appeal.

> It has long been this Court's view that specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal. Most simply put, "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999) (discussing

-8-

specifically a directed verdict issue); *see, e.g.*, *Harrison v. Leach*, 323 S.W.3d 702, 708-09 (Ky. 2010); *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) ("More importantly, this precise argument was never made in the trial court. An appellate court 'is without authority to review issues not raised in or decided by the trial court.'") (quoting *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989)); *Combs v. Knott County Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859, 860 (1940) ("[A]ppellant is precluded from raising that question on appeal because it was not raised or relied upon in the court below. It is an unvarying rule that a question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court.").

*Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky. 2011) [abrogated on other grounds by *Nami Resources Company, LLC v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018)]. "The appellate court reviews for errors, and a nonruling is not reviewable when the issue has not been presented to the trial court for decision." *Turner v. Commonwealth*, 460 S.W.2d 345, 346 (Ky. 1970); *see also Hatton v. Commonwealth*, 409 S.W.2d 818, 819-20 (Ky. 1966). "[I]t is the accepted rule that a question of law which is not presented to or passed upon by the trial court cannot be raised here for the first time." *Hutchings v. Louisville Trust Co.*, 276 S.W.2d 461, 466 (Ky. 1955); *Benefit Ass'n of Ry. Employees v. Secrest*, 239 Ky. 400, 39 S.W.2d 682, 687 (1931). "The underlying principle of the rule is to afford an opportunity to the trial court, before or during the trial or hearing, to rule upon the question raised." *Hartsock v. Commonwealth*, 382 S.W.2d 861, 864 (Ky. 1964).

*Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018).

Accordingly, we hold that the circuit court's summary judgment in favor of KSBIT was not prematurely entered.

Next, we shall consider the University's main argument that it was entitled to coverage under the policy. In its summary judgment, the circuit court rejected the University's argument that the back pay and attorney fees grew out of, flowed from, or had an incidental relationship with Dr. Helm's claimed damages. It agreed with KSBIT that Dr. Helm's remaining alleged damages did not arise from the policy's definition of personal injury based upon the Jefferson Circuit Court's September 18, 2018, order and that Dr. Helm's claim under the Kentucky Whistleblower Act did not arise from alleged slander but from the non-renewal of his contract. The court therefore held that under the policy's definition of personal injury, KSBIT was not required to continue to provide a defense to the University against Dr. Helm's claims.

At the outset, we reject the University's argument that, with the proposed interpretation of the policy, KSBIT sought to eliminate a key provision from the policy and therefore it ran afoul of the prohibition against illusory coverage. As with its argument above regarding its ability to orally argue the motion, the University did not first raise this issue before the circuit court. Therefore, we shall not address this argument as it was not preserved for our review.

-10-

We shall now consider the University's remaining coverage argument. In *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Company*, 814 S.W.2d 273, 279 (Ky. 1991), the Supreme Court of Kentucky recognized:

> The proper standard for the analysis of insurance contracts in Kentucky is a subjective one. *Fryman v. Pilot Life Insurance Company*, Ky., 704 S.W.2d 205 (1986) holds that terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured.

*See also Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 681 (Ky. App. 1996) ("terms used in insurance contracts 'should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them.' *City of Louisville v. McDonald*, Ky. App., 819 S.W.2d 319, 320 (1991).").

The University contends that it was entitled to coverage based upon the holding in *James Graham Brown Found.*, *supra*, that "[t]he insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." 814 S.W.2d at 279 (citing *O'Bannon v. Aetna Casualty and Surety Company*, 678 S.W.2d 390 (Ky. 1984)). "The duty to defend continues to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy and not merely that it might not be." *James*

-11-

*Graham Brown Found.*, 814 S.W.2d at 279 (citing 7C JOHN APPLEMAN & JEAN APPLEMAN, *Insurance Law and Practice* § 4683.01 at 69 (Berdal Ed. 1979)).

The University argues that the phrase "arising out of" in the policy is expansive enough to encompass the assertion that the alleged slander and disparagement did not have to be the sole or proximate cause of Dr. Helm's claimed damages to trigger coverage under the policy; those actions merely had to have an incidental relationship or connection to do so. As stated above, Section V(10) defines "personal injury" in relevant part as:

> [I]njury, other than 'bodily injury,' arising out of one or more of the following offenses:
>
> . . .
>
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> . . .
>
> f. Mental injury, mental anguish, shock, humiliation, defamation, and damage to professional reputation.

Because the retaliatory employment actions of which Dr. Helm complained arose from the publication and dissemination of allegedly slanderous and disparaging material and information, the University asserts that KSBIT continues to owe coverage to it.

On the other hand, KSBIT cites to *Kentucky Association of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 635 (Ky. 2005), for this statement of the law: "In Kentucky, an insurer has a duty to defend if there is an allegation which might come within the coverage terms of the insurance policy, but this duty ends once the insurer establishes that the liability is in fact not covered by the policy." Once the Jefferson Circuit Court ruled that Dr. Helm was not able to recover damages for mental anguish, pain and suffering, front pay, or having to sell his house in a certain market, he was only able to recover damages for six months of back pay and attorney fees. These items of damages, KSBIT argues, are not covered under the policy.

We agree with KSBIT that its duty to provide coverage ended once the Jefferson Circuit Court ruled that Dr. Helm's damages were limited to back pay and attorney fees. These items of damages do not represent the type that would arise from mental injury, mental anguish, shock, humiliation, defamation, and damages to a professional reputation, as personal injury is defined in the policy.

And we agree with KSBIT's citation to *Mo-Jack Distributor, LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 906 (Ky. App. 2015), that the policy does not cover Dr. Helm's claim for attorney fees, as the policy only covers damages:

> Not only are attorney fees typically not recoverable, but Kentucky has taken the view that attorney fees are not compensatory damages. "Compensatory damages are designed to equal the wrong

-13-

done by the defendant." *Gibson v. Kentucky Farm Mutual Insurance Company*, 328 S.W.3d 195, 204 (Ky. App. 2010) (quoting *Jackson v. Tullar*, 285 S.W.3d 290, 297-98 (Ky. App. 2007)). Attorney fees are not compensatory damages because any award "does not compensate the plaintiff for any wrong done by the defendant." *Id*.

The Court went on to explain:

> [A]ttorney fees in this Commonwealth are not compensatory in nature. Because the exception is grounded in equity, the issue of whether attorney fees are recoverable is one exclusively within the discretion of the trial court and not properly submitted to the jury as an element of compensatory damages. Unless agreed to by the parties, equitable issues are not triable by juries. *Smith*[] *v. Bear, Inc.*, 419 S.W.3d 49, 58 (Ky. App. 2013). Even if permitted, unless otherwise directed by statute, whether attorney fees are available and the amount of such fee "is the responsibility of the trial court, and not the jury[.]" *Gibson*, 328 S.W.3d at 204.
>
> The existing precedent is clear that absent statutory authority, attorney fees incurred to either bring or defend an action cannot be submitted to a jury as an item of compensatory damages.

*Id*. at 906.

In addition, KSBIT disputes the University's argument that Dr. Helm's claim arose from the plagiarism allegations made by his colleague, as his claim under the Kentucky Whistleblower Act arose from retaliation resulting in the non-renewal of his contract. For the reasons set forth in KSBIT's brief, we agree that because Dr. Helm's claim arose from retaliation, not from allegedly slanderous

-14-

or libelous materials, paragraph (d) of the policy's definition of personal injury does not trigger any duty on KSBIT's part to defend or indemnify the University.

Therefore, we hold that the circuit court did not err as a matter of law in concluding that KSBIT was not required to continue to provide coverage based upon the policy's definition of personal injury.

Finally, the University argues that because the Jefferson Circuit Court's order was interlocutory and subject to revision, KSBIT's duty to defend continued. The University relies upon the former Kentucky Court of Appeals' opinion in *Ursprung v. Safeco Insurance Company of America*, 497 S.W.2d 726, 730-31 (Ky. 1973), in which the Court stated, "the contractual obligation to defend carries with it an obligation to prosecute an appeal from a judgment against an insured where there are reasonable grounds for appeal." Therefore, it asserts that only after the appellate process had been completed (or waived) could that order become final and act as a bar to coverage.

We disagree and hold that the circuit court properly relied upon the holding in *McClendon*, *supra*, that "an insurer has a duty to defend if there is an allegation which might come within the coverage terms of the insurance policy, but this duty ends once the insurer establishes that the liability is in fact not covered by the policy." 157 S.W.3d at 635. As KSBIT argued, the decision in *Ursprung* involved an established duty to defend, which would require an insurer to

prosecute an appeal on behalf of its insured if the insured lost at the trial court level. Here, on the other hand, KSBIT's coverage was in dispute, and the Jefferson Circuit Court held that Dr. Helm could not recover damages for the claim upon which the duty to defend was premised. The circuit court noted that KSBIT had provided a defense in Dr. Helm's action and won, meaning that there was no need to prosecute an appeal on the University's behalf. Based upon the holding in *McClendon*, *supra*, there was no continuing duty for KSBIT to provide coverage to the University in Dr. Helm's action.

For the foregoing reasons, the summary judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Susan D. Phillips
Patricia C. Le Meur
William O. Orberson
Louisville, Kentucky

BRIEF FOR APPELLEE
KENTUCKY SCHOOL BOARDS
INSURANCE TRUST:

Jeffrey C. Mando
Jennifer L. Langen
Covington, Kentucky